**Edward C. MAHER, Appellant,**

v.

**The EAST NORRITON TOWNSHIP ZONING HEARING BOARD.**

Commonwealth Court of Pennsylvania.

Argued March 7, 2000.
Decided Dec. 14, 2000.

Arthur L. Jenkins, Jr., Norristown, for appellant.

Paul C. Troy, Norristown, for appellee.

Before McGINLEY, Judge, FLAHERTY, Judge and RODGERS, Senior Judge.

FLAHERTY, Judge.

This is an appeal from the Order of the Court of Common Pleas of Montgomery County denying the Appeal of Edward C. Maher ("Mr. Maher" or "Appellant") from the Decision of the Zoning Hearing Board of East Norriton Township ("the Board") and affirming the Decision of the Board. We reverse.

The Norriton Fire Engine Company ("the Fire Company") applied for a special exception pursuant to Section 205–144 of the Zoning Code ("the Zoning Code") of East Norriton Township ("the Township") to construct a personal use heliport on its property. In conjunction therewith, it requested a variance to the requirement of Section 205–144B of the Code that personal use heliports be located no closer than one hundred (100) feet to the property line of the applicable parcel of land and no closer than five hundred (500) feet to a residential district. The Fire Company is the owner of a parcel of land located at the intersection of Whitehall Road and Germantown Pike in the Township. The subject property is located within an Institutional Zoning District which permits personal use heliports as a special exception pursuant to Section 205–144. A hearing was held before the Board on the Fire Company's application, at which testimony was adduced from George Meyers ("Mr.Meyers"), the Fire Company's Deputy Chief, Mr. Maher and Bruce S. Shoupe ("Mr.Shoupe"), the Code's enforcement officer for the Township.

Mr. Meyers testified that due to the dimensions of the property on which the Fire Company is situated and the size of the fire trucks, the proposed heliport would be constructed on a platform on a detention basin. He testified that because the Fire Company was unable to purchase any additional adjacent land from the Commonwealth of Pennsylvania, it was necessary to request a variance from the set-back requirements of Section 205–144B of the Zoning Code. Mr. Meyers indicated that the proposed heliport would be similar to the one operated by nearby Suburban General Hospital ("Suburban"). However, he expressed uncertainty when asked which and how many helicopter company(ies) would operate from the heliport and what the landing path of the helicopter(s) would be. He indicated that the

Fire Company would operate the heliport under a lease arrangement with an emergency helicopter service still undetermined at the time of the hearing and that the State Police may, from time to time, use the heliport. Mr. Meyers also informed the Board that the Fire Company had not yet applied for a license or a permit to operate the heliport facility and was unsure whether the proper licensing authority was the Federal Aviation Administration or the Pennsylvania State Police. He believed that the better procedure was to apply for a special exception and a variance before seeking a permit or license from the issuing authority because of the expense involved. Mr. Meyers testified that the State Police had indicated that no problem would arise with the licensing application. However, he did not present any witness from the State Police to corroborate this. When asked by the Board about an alternative location, Mr. Meyers explained that it was impossible to locate the proposed heliport in the Norristown Farm Park adjacent to the Fire Company property because that property was owned by the Commonwealth of Pennsylvania and was not being sold.

The minutes from the Township Planning Commission ("the Commission") meeting were then read into evidence. At that meeting, a Motion was made and then passed that the Fire Company's application did not contain sufficient information to enable the Commission to make a recommendation to the Board regarding the grant of the special exception and the variance. The Commission expressed concern about the noise level, traffic congestion and flight traffic due to the fact that nearby Suburban would still maintain its heliport.

Mr. Maher then testified at the hearing. He questioned the need for another heliport in the area, especially since Suburban's heliport was nearby, and asked why no professional study had been done to determine need. Mr. Maher was advised by Mr. Meyers that a user's fee for the heliport would be assessed and that a helicopter would be permanently parked at the port. Mr. Maher also expressed concern about the noise level impact in the residential area where he resided.

Appellant contends that the Board erred in granting the Fire Company's request for a special exception conditioned upon future compliance with licensing requirements. We agree. The Pennsylvania Department of Transportation Bureau of Aviation ("PennDot") is the licensing authority for airports and heliports. Section 471.3 of the PennDot Regulations provides as follows:

§ **471.3. Airport licensing.**

(a) *Authority.* No person may establish, maintain or operate an airport, nor conduct flight operations at an airport, *unless* authorized to do so by the Bureau. This does not apply to...infrequent operations by helicopters or aircraft with characteristics permitting operation from sites not specially prepared therefor.

67 Pa.Code § 471.3(a). Second emphasis supplied. "Heliport" is defined in the PennDot Regulations as follows:

*Heliport*—An area of land, water or structure which is used or intended to be used for the landing and takeoff [sic] helicopters.

*Id.,* Section 471.2. **Definitions.** "Airport" includes heliports. Heliports are not exempt from the licensing requirements of Section 471.3. According to the foregoing regulatory definition, a heliport is an area intended to be used for the landing and takeoff of helicopters. Thus, it is a site "specially prepared therefor." Moreover, Section 471.6, **Heliport rating,** provides for "rating categories to be used by the Bureau for *issuance of a heliport license.*" Emphasis supplied. Additionally, Section 471.7 states, in relevant part:

§ **471.7. Licensing criteria and requirements.**

(a) Criteria for *licensing* of airports and *heliports* are set forth in Appendix A.

(b) The following are requirements applicable to airports and *heliports which shall obtain a license:*

\*    \*    \*

Emphases supplied. From the foregoing, we conclude that heliports are subject to the licensing requirements of the PennDot Regulations. We find, further, that licensure must be obtained *before* application is made to the Board for a special exception to the Zoning Code. In this regard, we turn to subsection "(h)" of Section 471.3 of the PennDot Regulations:

(h) *Zoning. Issuance of an airport license* does not preempt requirements of local zoning authorities.

Second emphasis supplied. We are persuaded, therefore, that the language of Section 471.3(a) and (h) lends itself to no other interpretation but that licensure *precede* the establishment, maintenance or operation of a heliport. At the hearing, Mr. Meyers conceded that the Fire Company had not made formal application for licensure because of the expense involved in the event the Board would deny its application for a special exception. The Regulations, however, make no exceptions. Their language, in our view, is unequivocal that application for licensure must be made and a license must be obtained *before* the Board can act on a request for a special exception to construct and operate a heliport. Furthermore, we are mindful of a similar requirement in Section 205–144 of the Zoning Code:

A personal use heliport shall be permitted as a special exception in the…Institutional Zoning District[ ] *only when licensed* by the Bureau of Aviation of the Pennsylvania Department of Transportation….

Emphasis supplied. In addition, we cannot ignore the mandate of Section 471.3 of the PennDot Regulations which clearly states that a heliport may not be *established* without authorization. The grant of a special exception is the first step in the *establishment* of a heliport and would violate the applicable PennDot regulations which require licensing as a condition precedent. Thus, the language of Section 471.3(a) and (h) of the PennDot Regulations and Section 205–144 of the Zoning Code unequivocally and unambiguously require that licensure be a condition precedent to any action by the Board on an application for a special exception to construct and operate a heliport.

Because we deem the application for and the obtaining of a license to construct and operate the proposed heliport to be a condition precedent to any application to or action by the Board, we reverse. In view of the foregoing, the Order of the Court of Common Pleas of Montgomery County denying the Appeal of Mr. Maher from the Decision of the Board and affirming the Decision of the Board is reversed.[1]

### ORDER

AND NOW, this 14th day of December, 2000, the Order of the Court of Common Pleas of Montgomery County is hereby reversed.

---

1. In light of our disposition, we need not address any of the other issues presented by Appellant regarding future compliance with licensing, fencing and parking requirements and failure to demonstrate how the parking area would be reconfigured.