**TELVIL CONSTRUCTION CORPORATION**

v.

**The ZONING HEARING BOARD OF EAST PIKELAND TOWNSHIP and Board of Supervisors of East Pikeland Township**

**Appeal of: East Pikeland Township**

**In Re: Appeal of Telvil Construction Corporation from the decision of the East Pikeland Township Zoning Hearing Board**

**Appeal of: Telvil Construction Corporation.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 9, 2005.
Decided March 16, 2006.
Reargument Denied May 15, 2006.

---

Scot R. Withers and Mark P. Thompson, West Chester, and Andrew J. Bellwoar, Chester Springs, for appellant, Board of Supervisors of East Pikeland Township.

Rowan Keenan, Collegeville, for appellee, Telvil Construction Corporation.

BEFORE: COLINS, President Judge, and LEADBETTER, Judge, and KELLEY, Senior Judge.

OPINION BY Judge LEADBETTER.[1]

East Pikeland Township and Telvil Construction Corporation cross appeal from the order of the Court of Common Pleas of Chester County (common pleas), which reversed the decision of the Township's Zoning Hearing Board (ZHB), and gave specific direction to the Township Board of Supervisors concerning its pending review of Telvil's land development plan. Before the court in this appeal is the question whether our earlier decision in *Valenti v. Washington Township*, 737 A.2d 346 (Pa. Cmwlth.1999) mandates that a property owner who files a land development plan under the terms of an existing zoning ordinance which is later superceded by a new ordinance is entitled to demand that his development be considered based on a hypothetical ordinance which incorporates the most favorable aspects of both. Because we believe that common pleas erred in reaching this conclusion, we reverse to the extent its order imposed such a requirement.

In July of 2002, Telvil submitted a sketch plan for the subdivision of 22.7 acres that it agreed to purchase from the Hunsberger family. On the parcel, which is located in Township's R–2 Residential zone, Telvil proposed nine residential lots each with an on-site sewage system. Under the East Pikeland Township Zoning Ordinance of 1991 (1991 Ordinance), which was in effect in July, 2002, lots in the R–2 district to be served by on-site sewage systems must have a lot area of at least one acre. However, lots requiring installation of elevated sand mound sewage systems or "alternative on-site systems" must have a minimum lot area of 100,000 square feet (approximately 2.3 acres) regardless of otherwise applicable zoning district provisions. Hence, under the 1991 Ordinance, the type of sewage system may dictate the number of lots permitted. Therefore, after receiving the proposed plan, the Township engineer informed Telvil that, pursuant to Section 303 of the Subdivision and Land Development Ordinance (SLDO), it must determine the type of on-lot sewage system required on each proposed lot.

In October of 2002, the Township enacted a revised zoning ordinance (2002 Ordinance), in pertinent part, rezoning Telvil's land to AP Agricultural Preservation. If applied to Telvil's site, the 2002 Ordinance would eliminate the 2.3–acre lot size requirement for lots needing elevated sand mound sewage systems but nevertheless

1. This case was reassigned to the author on January 31, 2006.

would, via the density limitations applicable to the AP district,[2] limit subdivision to a maximum of six lots rather than the nine lots proposed by Telvil under the 1991 Ordinance. In the summer of 2003, approximately six months after the Township engineer once again requested information on Telvil's proposed sewage systems, the company reported that, based on deep-hole testing, at least five of its proposed lots would require elevated sand mound systems. Because of this need, the terms of the 1991 Ordinance would, like the 2002 Ordinance, significantly reduce the number of permitted lots on the property, and the Township communicated to Telvil that it could not consider its proposal for nine lots unless Telvil obtained variance relief from the ZHB. Shortly thereafter, in August of 2003, Telvil filed the instant application to

the ZHB, challenging the constitutionality of the 1991 Ordinance's increased lot size requirement for sand mound systems and, alternatively, seeking a variance.

The ZHB denied relief on each of these grounds, but in the process of so holding, it opined on an issue not before it, to wit, the applicability of the 1991 Ordinance to Telvil's plan. Although finding the 1991 Ordinance passed constitutional muster, it added that the issue was irrelevant because the sketch plan filed by Telvil in July of 2002 was incomplete, and thus not "duly filed" while the 1991 Ordinance was in effect.[3] Notably, however, the ZHB did not dismiss the validity challenge as moot, but denied it, so its *obiter dictum* concerning the completeness of the plan was of no consequence to its order.[4] Telvil appealed

---

2. Under Section 502.2.A of the 2002 Ordinance, parcels of less than twenty acres located in the AP district are limited in density to "One lot for Each 1.5 Acres, net, not to exceed 4 Lots" and parcels of twenty acres or more are limited, as follows:

| | |
|---|---|
| First Ten (10) Acres, gross | Four (4) Lots |
| Next Ten (10) Acres, gross | Two (2) Lots |
| Each Additional Ten (10) Acres, gross | One (1) Additional Lot |

3. East Pikeland Township's Subdivision and Land Development Ordinance (SLDO) requires that an applicant file a sketch plan. We note that when a municipality requires the submission of a sketch plan as a step in the subdivision and land development process, the provisions in Section 508 of the Municipalities Planning Code (MPC), Act of July 31, 1968, *as amended,* 53 P.S. § 10508 apply. *See Belber v. Lower Merion Township,* 163 Pa.Cmwlth. 127, 639 A.2d 1325, 1327 n. 3 (1994). Section 508(4)(i) provides, in pertinent part, that:

(4) Changes in the ordinance shall affect plats as follows:

(i) From the time an application for approval of a plat, whether preliminary or final, is duly filed as provided in the subdivision and land development ordinance, and while such application is pending approval or disapproval, no change or amendment of the zoning, subdivision or other

governing ordinance or plan shall affect the decision on such application adversely to the applicant and the applicant shall be entitled to a decision in accordance with the provisions of the governing ordinances or plans as they stood at the time the application was duly filed.

4. The MPC assigns responsibility for review of subdivision and land development plans exclusively to the governing body of the municipality. See Section 909.1 of the MPC added by the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10909.1. As common pleas accurately noted, the Township did not reject the plan as incomplete, but simply requested supplemental information and subsequently, "indicated through its representatives that the plan could not be approved without [variance] relief from the ZHB.... Telvil obviously acquiesced, even if only *sub silentio,* to this procedure." Order, 12/27/2004, n. 1. We agree with common pleas' view. As far as the record before this court reflects, the Township consistently treated Telvil's proposal as a sketch plan filed under the 1991 Ordinance until the ZHB issued its decision. The ZHB erred in making a finding contrary to the apparently consistent understanding of the parties, on a matter not litigated by the parties, not properly before the ZHB and unnecessary to its ultimate order.

to common pleas, pressing its constitutional claim and also arguing that under *Valenti* it was entitled to the most beneficial portions of both ordinances, *i.e.*, to be allowed nine lots regardless of the sewage systems used.

■ On appeal, common pleas agreed with the ZHB on the issues actually litigated before that body and upon which it had actually entered an order, specifically that the 1991 Ordinance passed constitutional muster and that Telvil had not established grounds for a variance. However, instead of simply affirming that order, it accepted Telvil's invitation to further decide the issue of which ordinance provisions the Township Supervisors ought to apply in evaluating the land development plan when that issue was ripe, holding that Telvil could take advantage of the most favorable provisions of both the 1991 Ordinance and of the 2002 Ordinance (or any other subsequent ordinances). It reversed[5] the decision of the ZHB and further ordered that:

Telvil may proceed with the processing of its sketch plan by the Board of Supervisors of East Pikeland Township, which shall apply Section 405 of the Zoning Ordinance of 2002 [requiring a minimum one acre lot where elevated sand mound required] and not Section 404(2) of the Zoning Ordinance of 1991, and any other provisions of the Township's Zoning, Subdivision and Land Development, or other ordinances adopted subsequent to Telvil's submission of a sketch plan to the extent, and ONLY to the extent, that such provisions are more favorable to Telvil than the provisions of any such ordinances, including but not limited to the Zoning Ordinance of 1991, as were in effect at the time the sketch plan was submitted.

Order of common pleas, filed December 28, 2004.[6] The Township appealed, challenging common pleas' interpretation of *Valenti*, and Telvil cross-appealed, asserting the unconstitutionality of Section 404(2) of the 1991 Ordinance.

■ However it has come into this case, the Township's appeal of common pleas order brings the proper interpretation of *Valenti* squarely before this court, and we

5. Although its opinion clearly suggests its intent to affirm the ZHB's decisions on the variance request and validity challenge but reverse the ZHB's conclusion that the sketch plan was not "duly filed," common pleas' order reverses without qualification. We assume this was simply an inadvertence, but as a result, we are constrained to reverse common pleas even though we agree with its analysis on the constitutional issue.

6. Common pleas also stated in a footnote to its order that, "the matter now goes back to the Board of Supervisors who shall have a reasonable period of time within which to render a decision on the sketch plan. Such period of time shall be as the parties shall agree or, in lieu of agreement, within forty-five (45) days from the date of this order." Since this appeared in a footnote and the timing of the Supervisors' review of the pending plan was not in issue, we take this language to be an observation rather than a

directive. It is possible that common pleas was attempting to obviate a belated suggestion that the sketch plan should be deemed approved pursuant to Section 508(9) of the MPC. We note however that, even if such a claim could be raised at this point, and even if the Board of Supervisors failed to render a timely decision on a sketch plan, resulting in a deemed approval, such a result would not relieve an applicant from compliance with zoning ordinance requirements. In *Annand v. Board of Supervisors of Franklin Township*, 160 Pa.Cmwlth. 93, 634 A.2d 1159 (1993), our court made clear that a deemed approval of a subdivision application amounts to approval of only those aspects of the plan governed under the SLDO and does not amount to de facto variance relief from applicable zoning ordinance requirements. *Id.* at 1161. *See also Appeal of Fiori*, 160 Pa.Cmwlth. 659, 635 A.2d 743 (1993).

now turn to that question. Although it would appear that the trial court in *Valenti* may have so held, neither the analysis nor the holding of this court opens the door to an applicant to pick and choose among old and new ordinances in a manner that essentially crafts a hybrid ordinance applicable to only his particular subdivision. In *Valenti*, neighbors challenged the approval of a 14–lot residential subdivision on ten acres, asserting error in the supervisor's waiver of four requirements under the Township's SLDO. In particular, the SLDO in effect at the time of application mandated the depiction on the plans of all physical features within 400 feet of the site, limited cul-de-sac length to 500 feet, limited the number of residences along a cul-de-sac to a maximum of 10, and required street right-of-ways to be a minimum of 50 feet. In sustaining waivers from these four requirements, our court initially noted that under Section 508(4) of the MPC, *as amended*, 53 P.S. § 10508(4), municipal review of a proposed subdivision must be based on the ordinances in effect at the time of application. The court further noted that under the MPC, the power to grant SLDO waivers resides with the supervisors, who may relax SLDO standards upon proof less rigorous than that required in order to obtain a variance from the Zoning Hearing Board.[7] *See Valenti*, 737 A.2d at 349 ("township may grant waivers which it deems appropriate in the interests of the township"). *See also Morris v. South Coventry Township Board of Supervisors*, 836 A.2d 1015, 1022–23 (Pa. Cmwlth.2003). In support of the conclusion that the supervisors did not abuse their discretion in granting waivers from the first three provisions, the *Valenti* court pointed to the fact that during the pendency of the subdivision application the supervisors had amended the SLDO, relaxing these requirements. The court remarked that, "it would be illogical to hold that a developer must abide by the old requirements of an Ordinance when such requirements have been subsequently changed in the developer's favor. The developer could always elect to simply withdraw the plans from consideration and refile them subsequent to the amendments." 737 A.2d at 349. The court did not go so far as to rule that the SLDO amendments rendered the waivers unnecessary. Nor did the court, explicitly or implicitly, abro-

---

**7.** Section 503(8), *as amended*, 53 P.S. § 10503(8), provides that a subdivision and land development ordinance may include:

Provisions for administering waivers or modifications to the minimum standards of the [SLDO] in accordance with section 512.1, when the literal compliance with mandatory provisions is shown to the satisfaction of the governing body or planning agency, where applicable, to be unreasonable, to cause undue hardship, or when an alternative standard can be demonstrated to provide equal or better results.

Section 512.1, added by the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10512.1, in pertinent part, provides:

(a) The governing body or the planning agency, if authorized to approve applications within the subdivision and land development ordinance, may grant a modification of the requirements of one or more provisions if the literal enforcement will enact undue hardship because of peculiar conditions pertaining to the land in question, provided that such modification will not be contrary to the public interest and that the purpose and intent of the ordinance is observed.

Notably, in order to develop the land as proposed, Telvil requires relief from a zoning ordinance provision, not SLDO provisions as was the case in *Valenti*. The standards for granting SLDO waivers and the municipal body authorized to grant them (i.e. the Supervisors), differ significantly from those applicable to a request for zoning ordinance variances and the municipal body authorized to grant such variances (i.e., the ZHB). *Compare* Sections 909.1 and 910.2 of the MPC, added by the Act of December 21, 1988, 53 P.S. § 10910.2 *with* Section 512.1.

gate the well-established rule that subdivision applications must be reviewed under the ordinances in effect at the time of application rather than under pending revisions thereto.

 Here, of course, the issue is not whether the Supervisors acted within their discretion by *granting* waivers which coincide with SLDO ordinance amendments, but rather whether the property owner has a *right* to obtain the benefits of the most favorable aspects of both the old and new *zoning* ordinances where the ZHB has properly *denied* variances. These circumstances alone render *Valenti* inapplicable. Nonetheless, common pleas points to the protection afforded landowners under Section 508(4) to support its understanding that, under *Valenti*, an applicant is entitled to any beneficial ordinance amendments. Section 508(4) directs that no change or amendment to zoning, subdivision or other governing ordinances shall be applied to adversely affect a decision on a pending subdivision or land development application. We believe common pleas has read Section 508(4) too expansively. Nothing in the statutory language suggests that a landowner is entitled to enjoy the selective application of ordinance changes beneficial to his pending application while ignoring adverse changes in favor of an old ordinance. Permitting such a pick and choose approach to zoning ordinances creates hybrid spot zoning for a particular site and, in so doing, applies Section 508(4)'s limited statutory exception to the common law "pending ordinance doctrine" in a manner

that effectively eviscerates the general doctrine.[8]

In addition, such a pick and choose approach potentially wrecks havoc with a municipality's land use goals and policies. The MPC directs a municipality to craft its ordinances, whether SLDO or zoning ordinance, in a manner designed to facilitate general planning goals as set forth in its comprehensive land development plan or statement of community development objectives. *See* MPC Sections 301 (preparation of comprehensive plans), 503(2)(i) (SLDO to include provisions facilitating layout or arrangement of subdivision in conformance with comprehensive plan) and Section 603 (zoning ordinance to reflect policy goals and community development objectives). 53 P.S. §§ 10301, 10503(2)(i), 10603. In this regard, particular requirements work in concert with others to promote these plans and policies. Often amendments to a SLDO or a zoning ordinance interrelate so that the relaxation of a requirement under one provision correlates with an enhanced requirement under a separate provision in a manner designed to achieve certain development objectives. Allowing such objectives to be thwarted by mandating a hybrid application of the least restrictive provisions of old and new ordinances simply because of the timing of a land development application serves no legitimate purpose, and finds no basis in the policies underlying the MPC or in its language. For all these reasons, we hold that common pleas erred in its application of *Valenti* and of Section 508(4).

8. As our court explained in *Lehigh Asphalt Paving and Construction Co. v. Board of Supervisors of East Penn Township*, 830 A.2d 1063 (Pa.Cmwlth.2003), the "pending ordinance doctrine" has more than one manifestation. Of particular relevance in the present case, the label applies to the common law rule, which protects the municipality from the initiation of a use about to become non-conforming under a pending ordinance and also the label applies to the limited modification of the common law rule effected under Section 508(4), which protects pending subdivision and land development applications from post-application ordinance amendments. *Id.* at 1067 n. 3.

In its cross-appeal, Telvil challenges the ZHB's decision on the substance of Telvil's validity/variance action. In its decision, the ZHB declared that Telvil had failed to sustain its heavy burden to establish ordinance invalidity and had failed entirely to submit any evidence in support of its variance request. Common pleas stated that it agreed with this assessment on the part of the ZHB. We also agree. Telvil's evidence in support of ordinance invalidity consisted entirely of testimony by its engineer, who opined that neither sand mound sewage systems nor drip irrigation systems required a lot size of 100,000 square feet. However, the Township does not premise its requirement solely on the land area necessary for sewage disposal. Rather, the Township contends that it requires larger lots, where problematic soil absorption rates dictate the use of sand mounds and other alternative sewage systems, in order to accommodate not only the larger single family home, the primary sewage system and a back up replacement area but also the permitted accessory uses (such as pools, patios and gardens) commonly associated with this type of home. Telvil's evidence does not establish that the larger lot requirement produces the exclusionary effect prohibited by our Supreme Court in *Surrick v. Zoning Hearing Board of the Township of Upper Providence*, 476 Pa. 182, 382 A.2d 105 (1977) and *National Land Investment Co. v. Easttown Township Board of Adjustment*, 419 Pa. 504, 215 A.2d 597 (1965). Nor does this evidence establish, under the analysis set forth in *C & M Developers, Inc. v. Bedminster Township Zoning Hearing Board*, 573 Pa. 2, 820 A.2d 143 (2002),[9] that the lot size requirement is unreasonable, arbitrary or not sufficiently related to proper zoning purposes.

Accordingly, since it reversed the Zoning Hearing Board's denial of Telvil's validity challenge to the 1991 Ordinance, we reverse the order of the court of common pleas in its entirety.

### ORDER

AND NOW, this 16th day of March, 2006, the order of the Court of Common Pleas of Chester County in the above captioned matter is hereby REVERSED.

DISSENTING OPINION BY President Judge COLINS.

I must respectfully dissent from the well-reasoned, scholarly opinion of the majority.

Where, as here, a municipality requires that the subdivision application process begin with submission of a sketch plan, the requirements of § 508(3) of the MPC, 53 P.S. § 10508(3), attach, and a decision must be rendered or the sketch plan is deemed to have been approved. I respectfully disagree with the majority and believe that Telvil is entitled to protection under 53 P.S. § 10508.

Although Article V of the Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, as amended, 53 P.S. §§ 10501–10515.3, contemplates a single-step preliminary plan approval process, municipalities may require a two-step preliminary approval process, and submission at the first stage may then be subject to the deemed approval provisions of MPC section 508(3). *Belber v.*

---

**9.** In *C & M Developers,* our Supreme Court abrogated the rule that a large minimum lot requirement is per se unconstitutional absent extraordinary justification and stated that courts "must engage in a meaningful inquiry into the reasonableness of the restriction on land use in light of the deprivation of landowner's freedom thereby incurred." 573 Pa. at 15, 820 A.2d at 151.

*Lower Merion Township,* 163 Pa. Cmwlth. 127, 639 A.2d 1325 (1994) (citations omitted).

Failure of the governing body or agency to render a decision and communicate it to the appellant within the time and in the manner required herein shall be deemed an approval of the application in terms as presented unless the applicant has agreed in writing to an extension of time or change in the prescribed manner of presentation of communication of the decision, in which case, failure to meet the extended time or change in manner of presentation of communication shall have like effect. § 508(3) of the Municipalities Planning Code, 53 P.S. § 10508(3).

Here, although the defects in the tentative sketch plan may have been substantive, the Township is still required to assess the plan as submitted. The Township did not issue a decision within the prescribed time period; therefore, I would hold that the tentative sketch plan must be deemed approved.

This section of legislation was enacted to remedy indecision and protracted deliberations on the part of local governing bodies and to eliminate deliberate or negligent inaction on part of the governing officials. *Morris v. Northampton County Hanover Township Board of Supervisors,* 39 Pa. Cmwlth. 466, 395 A.2d 697 (1978). While I do not believe that the Board was intentionally trying to delay Telvil's plan, a decision must be rendered when a sketch plan is submitted.

The majority points out that the ZHB denied the validity challenge, and thus there *obiter dictum* concerning the completeness of the plan was of no consequence to its order. While the ZHB may have denied the validity challenge, the Township never properly denied the sketch plan as 53 P.S. § 10508(3) mandates.

The majority quotes the trial court in footnote 4 that "telvil obviously acquiesced, even if only *sub silentio,* to this procedure." However, under 53 P.S. § 10508(3), a party must agree in writing to such a change. There was no such written agreement in this case and for this reason I would find that the sketch plan should be deemed approved.