**In Re: Appeal of HERITAGE BUILD-ING GROUP, INC. and Fieldstone Farm of Sladek Road, a trust, from the Decision of the Plumstead Township Zoning Hearing Board.**

**Appeal of: Plumstead Township Board of Supervisors.**

Commonwealth Court of Pennsylvania.

Argued June 10, 2009.

Decided July 24, 2009.

Jonathan J. Reiss, Perkasie, for appellant.

John A. Van Luvanee, Doylestown, for appellees, Heritage Building Group, Inc. and Fieldstone Farm of Sladek Road, a trust.

BEFORE: SIMPSON, Judge, FRIEDMAN, Senior Judge, and McCLOSKEY, Senior Judge.

OPINION BY Senior Judge FRIEDMAN.

Plumstead Township Board of Supervisors (Board) appeals from the November 13, 2008, order of the Court of Common Pleas of Bucks County (trial court), which reversed the decision of the Plumstead Township Zoning Hearing Board (ZHB) to deny Fieldstone Farm of Sladek Road and its agent, Heritage Building Group, Inc., (together, Heritage) a zoning permit to place twenty-two controlled fill piles on a seventy-three acre tract of land known as Tollgate Farm. We affirm.

Tollgate Farm is located in the RO Rural Residential zoning district of Plumstead Township (Township). In 2001, Heritage filed a preliminary subdivision and land development plan seeking approval for a twenty-four lot subdivision. The subdivision plan designated twenty-three of the lots as single-family detached dwellings. The twenty-fourth lot was designated as an E–1 Utility Use, the intended site for construction of a centralized sewage system to serve both Tollgate Farms and Fieldstone Farm, an adjacent subdivision. Heritage has waived its right to a decision on its plan within ninety days as provided by section 508 of the Pennsylvania Municipalities Planning Code (MPC),[1] and has granted the Township an indefinite extension of time to act on its subdivision application, revocable by either party upon thirty-days notice. (R.R. at 200a.)

Heritage proposed the centralized sewage system because soil testing revealed that the ground was not suitable for elevated or subsurface sewage disposal; a municipal sewage collection system was not considered a viable alternative due to the distance of interceptors from the project site. (R.R. at 143a–53a.) A centralized sewage system is permitted as an E–1 Utility Use in the RO zoning district as a special exception, and, after submitting its subdivision application, Heritage applied for a special exception to construct the centralized sewage system. In order for the special exception to be granted, the proposed use must comply with all other zoning ordinance provisions. (R.R. at 221a.) Accordingly, Heritage also applied for several variances. While the application for a special exception and variances was pending, the Township Engineer twice sent review letters to Heritage suggesting that Heritage perform additional testing to determine whether on-lot sewage systems were a feasible alternative to the proposed centralized sewage system. (R.R. at 180a, 198a.)

In August 2003, the ZHB denied Heritage's special exception application. The ZHB found that Heritage can develop a significant and reasonable number of lots with on-lot sewage systems in conformity with the Zoning Ordinance and concluded that Heritage was not entitled to the necessary variances. (R.R. at 201a–23a.) The ZHB also concluded that the proposed centralized sewage facilities would be injurious to the public health, safety and welfare. Heritage filed an appeal with the trial court, which, in April 2006, remanded the matter to the ZHB. On January 17, 2007, after taking additional evidence related to the Fieldstone Farm development, the ZHB again denied Heritage's special exception application. (R.R. at 288a–93a.) Heritage appealed to the trial court, and that appeal remains pending.

Heritage subsequently decided to pursue a four-year fill plan on twenty-two lots at Tollgate Farm, with the intent that, after four years, the addition of fill will have rendered the earth suitable to support an on-lot sewage disposal system. The four-year fill process involves identifying an appropriate area on each lot, scarifying the area (by means of scraping a backhoe several inches into the earth) and depositing a pile of fill onto the lot. In furtherance of the four-year plan, Heritage applied for and received a National Pollution Discharge Elimination System (NPDES) permit and approval of an erosion and sedimentation control plan to allow the placement of fill piles on the property. As required by the permitting process, Heritage notified the Township of its application for a NPDES permit.

---

**1.** Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. § 10508.

Thereafter, Heritage received a copy of a February 2, 2007, letter from the Township's Engineer to the Township Manager, advising that Heritage also was required to obtain a zoning permit for the proposed earth disturbance. (R.R. at 244a–45a.) The Township Engineer's conclusion was based on the language of section 2–2802 of the Township's 2001 zoning ordinance (2001 Ordinance), which states that no property may be altered, graded, disturbed or cleared of trees without a zoning permit. It is undisputed that section 2–2802 of the 2001 Ordinance took effect *after* Heritage submitted its subdivision application on June 27, 2001, and that no similar provision existed in the 1991 zoning ordinance (1991 Ordinance) that was in effect when Heritage filed its subdivision plan.

On May 11, 2007, Heritage filed a revised preliminary subdivision plan, which was essentially identical to the original plan but allowed for *either* a centralized wastewater treatment plant or the on-lot sewage disposal systems. The revised plan was placed on the Planning Commission's agenda, but consideration of the subdivision plan was postponed at Heritage's request. (R.R. at 104a.)

In light of the Township Engineer's February 2007 letter, Heritage filed an application for a zoning permit to place twenty-two piles of fill on the property. (R.R. at 276a.) In its cover letter, Heritage indicated that the zoning permit application was in furtherance of the currently pending subdivision plan and, therefore, did not address permit requirements that came into effect after the subdivision plan was filed. (R.R. at 267a–68a.)

Although not cited in this letter, Heritage relied on section 508(4)(i) of the MPC, which states as follows:

From the time *an application for approval of a plat,* whether preliminary or final, is duly filed as provided in the subdivision and land ordinance, and while *such application* is pending approval or disapproval, no change or amendment of the zoning, subdivision or other governing ordinance or plan shall affect *the decision on such application* adversely to the applicant and the applicant shall be entitled to a decision in accordance with the provisions of the governing ordinances or plans as they stood at the time the application was duly filed.

53 P.S. § 10508(4)(i) (emphasis added).

By letter dated August 6, 2007, the Township zoning officer first concluded that the revised plan, with its provisions for on-site sewage disposal, was so different from the original plan filed in 2001 that it constitutes a new plan, and, therefore, must be reviewed under the 2001 Ordinance.[2] The zoning officer then denied the zoning permit application on the basis that additional information was required to demonstrate compliance with other zoning provisions regulating wetland margins and riparian buffers, floodplain limits, crossings of regulated waters and temporary construction entrances. (R.R. at 274a–75a.)

Heritage filed an appeal to the ZHB. Following a November 5, 2007, hearing, the ZHB concluded that the zoning permit application was distinct from the pending subdivision application and must be reviewed under the ordinance in effect at the time the zoning permit application, rather

---

**2.** Although the Township's zoning officer believed that the revised plan submitted in 2007 constituted a new subdivision plan, the ZHB did not address that issue, and no such argument is raised in this appeal. Accordingly, our references to the subdivision plan/application refer to the subdivision plan that was filed in 2001 and revised in 2007.

than the subdivision application, was filed. After determining that a zoning permit was required, the ZHB also concluded that the permit had properly been denied. The ZHB announced its decision at its December 19, 2007, public hearing and issued a written decision on January 4, 2008. (339a–43a.)

Heritage filed a timely appeal with the trial court, arguing that the ZHB committed an error of law and/or abused its discretion when it applied section 2802–2 of the 2001 Ordinance, requiring Heritage to obtain a permit in order to begin the four-year fill process. Heritage argued that, pursuant to section 508(4)(i) of the MPC, its subdivision application must be reviewed under the 1991 Ordinance that was in effect at the time the subdivision plan was filed. Heritage further asserted that, because a workable sewage treatment process is a prerequisite to approval of its subdivision plan, and because the 1991 Ordinance does not require a permit authorizing soil disturbance, Heritage is not required to obtain a permit in order to undertake the proposed fill process.

Citing *Telvil Construction Corporation v. Zoning Hearing Board of East Pikeland Township*, 896 A.2d 651 (Pa.Cmwlth. 2006) (holding that no change to ordinances, whether favorable or unfavorable, may be applied to a pending land development application), the trial court agreed that section 508 of the MPC precludes the Board from applying the 2001 Ordinance and requiring Heritage to secure a zoning permit in order to undertake the fill process. The trial court observed that a sewage disposal system capable of being approved is integral to a subdivision application and noted that a ruling on Heritage's preliminary subdivision plan has been delayed for almost seven years specifically to allow Heritage time to determine a workable sewage system plan for the property. The trial court further noted that section 22–928(2) of the Township's Subdivision and Land Development Ordinance (SALDO) requires that the Planning Commission receive a "Letter of Suitability" for onsite sewage disposal from the Bucks County Department of Health for each lot, with the preliminary plan or prior to approval of final plans by the Township. Based on this provision and the evidence of record, the trial court concluded that Heritage must improve the currently unsuitable soil to a state capable of supporting an on-lot septic system in order to obtain approval of its subdivision application, and, therefore, a failure, or a delay, in bringing the soil into compliance with suitability standards directly affects the approval of Heritage's subdivision plans. The trial court concluded that the application of the 2001 Ordinance precluded Heritage from complying with section 22–928(2) and from providing a workable sewage treatment option in its subdivision plan, thereby adversely affecting a decision on Heritage's subdivision application in violation of section 508(4) of the MPC.

■ The trial court rejected the Board's argument that the placement of fill piles on the property is prohibited by section 22–106.1(1) of the Township's SALDO, which makes it unlawful to "construct improvements" on the property without first obtaining preliminary subdivision approval, and section 507 of the MPC,[3] which simi-

---

3. Section 507 of the MPC states as follows:
Where a subdivision and land development ordinance has been enacted by a municipality ... *no* subdivision or *land development* of any lot, tract or parcel of land shall be made, *no street, sanitary sewer, storm sewer,* *water main or other improvements in connection therewith shall be laid out, [or] constructed ...* except in accordance with the provisions of such ordinance.
53 P.S. § 10507 (emphasis added).

larly prohibits "improvements" on property unless the same has approval under a municipality's subdivision and land development ordinance. Accordingly, by order dated November 13, 2008, the trial court reversed the decision of the ZHB. The Board now appeals to this court.[4]

The Board first argues that it was error or an abuse of discretion to apply section 508 of the MPC to Heritage's request for a zoning permit, thereby permitting Heritage to alter, grade and improve the property, on the basis of a subdivision plan that has not received preliminary approval from the Board. The Board observes that section 22–928.2 of the SALDO only requires a Letter of Suitability for final approval, and there is no requirement that the sewage planning process be completed before the Board grants preliminary subdivision approval. Thus, the Board contends that Heritage should seek and obtain preliminary subdivision approval in accordance with the SALDO before commencing the four-year fill process.

Citing *Kohr v. Lower Windsor Township Board of Supervisors*, 910 A.2d 152 (Pa.Cmwlth.2006),[5] the Board also asserts that the sewage planning process is separate from the procedure for subdivision approval. In addition, the Board emphasizes that a zoning permit application is distinct from a subdivision application and maintains that, here, the denial of the former is not a denial of the latter.

■ However, none of the Board's arguments directly addresses the narrow issue presented here, which is whether the Board's application of the 2001 Ordinance adversely affected a decision on Heritage's subdivision application. The Township's SALDO requires Heritage to provide a workable sewage treatment option in order to obtain final approval of its subdivision plan. To satisfy that requirement, Heritage must improve the existing soil to a condition capable of supporting on lot sewage systems. The Board fails to recognize that, because its application of the 2001 Ordinance prevents or delays the commencement of the four year fill process, which is necessary to bring the soil into compliance with applicable standards, application of the 2001 Ordinance adversely affects a decision on Heritage's subdivision plan in violation of section 508(4) of the MPC.

■ In addition, we agree with the trial court that the placement of fill piles does not violate section 22–106.1(1) of the SALDO or Section 507 of the MPC. Because neither of these provisions defines the term "improvement," the Board relies on the definition of "improvement" contained in Blacks's Law Dictionary 757 (6th ed. 1990):

A valuable addition made to property (usually real estate) or amelioration in its condition, amounting to more than mere repairs or replacement, costing la-

---

4. Where, as here, the trial court does not take additional evidence, our scope of review is limited to determining whether the zoning hearing board abused its discretion or committed an error of law; when the trial court is alleged to have erred, we will consider whether the trial court committed an error or law or abuse of discretion. *Beers ex rel. P/O/A Beers v. Zoning Hearing Board of Towamensing Township*, 933 A.2d 1067 (Pa.Cmwlth. 2007), *appeal denied*, 596 Pa. 748, 946 A.2d 689 (2008).

5. In *Kohr*, we observed that the sewer planning process is a separate process from the subdivision approval process; there is no requirement that the sewer planning process be completed prior to the granting of preliminary subdivision plan approval, only that the process be commenced. Reversing the denial of preliminary subdivision plans, we held that the township should have approved the landowner's preliminary subdivision plan conditioned upon the landowner securing all required permits for final plan approval.

bor or capital, and intended to enhance its value, beauty or utility or adapt it for new or further purposes. Generally has reference to buildings, but may also include any permanent structures or other development, such as street, sidewalks, sewers, utilities, etc.

(Board's brief, p. 16.)

The record reflects that, at the end of the four-year period, the fill piles will have "become the land." (Trial ct. op. at 8.) We agree with the trial court that the removal of trees and bushes, scarifying of the earth and dumping of piles of dirt is not equivalent to laying out or constructing a street, sidewalk or sewer, as contemplated by section 507 of the MPC and the definition of "improvement" upon which the Board relies.

Accordingly, we affirm.

## ORDER

AND NOW, this 24th day of July, 2009, the order of the Court of Common Pleas of Bucks County, dated November 13, 2008, is hereby affirmed.