## LAKE ADVENTURE COMMUNITY ASSOCIATION, INC.

v.

DINGMAN TOWNSHIP ZONING HEARING BOARD and Dingman Township Board of Supervisors.

**Appeal of: Dingman Township Board of Supervisors.**

Commonwealth Court of Pennsylvania.

Argued June 17, 2013.

Decided July 10, 2013.

John J. Mahoney, Chester Springs, for appellant.

Tammy L. Clause, Newfoundland, for appellee Lake Adventure Community Association, Inc.

Debra P. Fourlas, Harrisburg, for amici curiae Pennsylvania Recreation Vehicle and Camping Association and Recreation Vehicle Industry Association.

BEFORE: SIMPSON, Judge, BROBSON, Judge, and McCULLOUGH, Judge.

OPINION BY Judge McCULLOUGH.

Dingman Township Board of Supervisors (Board) appeals from the October 1, 2012 order of the Court of Common Pleas of Pike County (trial court), which granted the land use appeal of Lake Adventure Community Association, Inc. (Landowner), reversed the decision of the Dingman Township Zoning Hearing Board (ZHB), and declared a portion of Ordinance 02–2010 (Ordinance) substantively invalid. We affirm.

The relevant facts and procedural history of this case are as follows. Landowner is a non-profit corporation in Pennsylvania and the owner of numerous properties in the Lake Adventure Development in Dingman Township (Township). Within that development is the Lake Adventure Community (the Property), which the Township approved as a recreational subdivision through the grant of a special exception in 1977. This exception permitted Landowner to have recreational vehicles on the Property.

In the restrictive covenants of the Lake Adventure Community Association, the term "recreational vehicle" included, among other things, a "travel trailer," which was defined to mean a vehicle with a "body width of no more than 8 feet when factory equipped for the road." As a catchall provision, the restrictive covenants also included within the definition of a "recreational vehicle" any "temporary living unit, vehicular or otherwise, as shall be approved by [Landowner's committee.]" (Reproduced Record (R.R.) at 69a–71a, 553a–58a); see Lake Adventure Community Association v. Anderson, 34 Pa. D. & C.4th 178, 182 (1996).

Landowner has approximately 1,800 lots on the Property, and hundreds of those lots are occupied by recreational vehicles. In addition to more commonly known camping vehicles, Landowner has allowed "slide-out" recreational vehicles (Slide–Out RVs) on the Property. The Slide–Out RVs are eight-feet wide as they travel over the roadway, but once parked, the entire side of the vehicle slides out, making it twelve-feet wide when completely set up. (R.R. at 232a, 440a–41a.)

Beginning in 1982, due to various issues with the slide-outs, the manufacturing industry altered the design of the Slide–Out RVs and converted them into a one-piece model that is twelve-feet wide while traveling on the road and remains twelve-feet wide when completely set up (12–Wide RVs). In contrast to the Slide–Out RVs, the 12–Wide RVs require a special highway moving permit to be transported because of their additional width. (R.R. at 504a–05a, 528a–29a, 557a–558a.) Specifically, section 4921(c)(1) of the Vehicle Code states that a recreational vehicle/trailer may not have a total outside width exceeding eight feet six inches, 75 Pa.C.S. § 4921(c)(1); under section 4961(a) of the Vehicle Code, the Department of Transportation (DOT) may issue special permits authorizing an applicant to operate or move a larger recreational vehicle/trailer on highways under its jurisdiction. 75 Pa. C.S. § 4961(a).

Pursuant to section 100–33(g)(6) of the Township's Subdivision and Land Development Ordinance (SALDO), recreational vehicles located in a recreational vehicle park must remain portable at all times, and a campsite lot cannot be occupied by the same people for more than six consecutive months or be the primary or principal residence of any person. On June 7, 2011, the Township enacted the Ordinance, which amended the definition of a "recreational vehicle" permitted in a recreational vehicle park to state as follows:

A transportable or vehicular type of unit initially designed as temporary living quarters for recreational camping or travel use *that does not require a special highway moving permit when transported* which either has its own [motor] or is mounted on or drawn by another vehicle. The types of recreation vehicles or units are:

a. Travel Trailers—A vehicular unit, mounted on wheels, of such size or weight *as not to require special highway moving permits when drawn by motorized vehicles (8.5 feet wide maximum)* designated and constructed to provide temporary living quarters for recreational, camping, or travel use, and not larger than 400 square feet when used for camping (in setup mode).

\* \* \*

c. Motor Homes—A vehicular unit built on a self-propelled motor vehicle chassis, designed to provide temporary living quarters for recreation, camping or travel use and not larger than 400 square feet. All such vehicles in use for camping shall have a current state license, inspection sticker and registration and be titled in the name of the current owner.

d. Camper Trailer—A vehicular unit mounted on wheels and constructed with collapsible partial side walls which fold for towing by another vehicle and unfold on the campsite and designed to provide temporary living quarters for recreational, camping or travel use and not larger than 400 square feet. . . .

(R.R. at 5a–6a) (emphasis supplied).

On June 22, 2011, Landowner filed a land use appeal challenging the substantive validity of the Ordinance and requesting a variance for the Property. Desiring to have 12–Wide RVs on the Property, one of Landowner's objections to the Ordinance was its prohibition of recreational vehicles that require a special highway moving permit when transported. Landowner alleged this exclusion is unreasonable and arbitrary because similar RVs, namely Slide–Out RVs, are permitted on the Property and there is no significant difference between the two types of RVs. (R.R. at 540a.)

On September 29, 2011, and October 27, 2011, the ZHB conducted hearings and received both testimony and documentary evidence.[1] In its findings of fact, the ZHB recounted and apparently accepted the testimony of Landowner's witnesses and Landowner's evidence. Notably, the ZHB acknowledged testimony and photographs from Landowner's compliance officer; this evidence demonstrated that the 12–Wide

---

1. The Township's June 7, 2011 amendment to the Ordinance was its second. The first amendment occurred on September 22, 2010, and restricted the size of recreational vehicles to 300 square feet. Landowner mounted a challenge to this amended version; however, the second amendment, which enlarged the size to 400 square feet, was enacted while the ZHB conducted hearings on the first amended version. Accordingly, Landowner filed a new challenge and a second hearing ensued. By stipulation, the parties agreed to incorporate the evidence submitted at the first hearing into the second hearing. (Trial court op. at 2; R.R. at 450a–51a.)

RVs and the Slide–Out RVs are approximately the same size when set up, both being less than 400 square feet, but the Slide–Out RVs travel over the road at a width of eight feet while the 12–Wide RVs travel over the road at a width of twelve feet. Additionally, the ZHB accepted the testimony of John Sword, a member of the recreational vehicle industry, who stated that the 12–Wide RVs used less water, created less sewage, and had a superior quality of construction when compared to the Slide–Out RVs. The ZHB noted that on cross-examination, Sword conceded that neither the Slide–Out RVs nor the 12–Wide RVs were being manufactured when the Lake Adventure Community filed its original restrictive covenants. (R.R. at 677a–78a; ZHB op. at 3–4.)

The ZHB also recounted and apparently accepted the evidence submitted by the Township. Particularly, the ZHB acknowledged testimony from the Township's witnesses concerning the adverse impact that the Property has had on the Township's environment. Most notably, Richard McGoey, the Township's Engineer, testified that records from the Pennsylvania Department of Environmental Protection (DEP) prove that there were several failures of Landowner's treatment plant facility, including one instance that resulted in hundreds of thousands of pounds of untreated sewage being discharged directly into a nearby creek. According to McGoey, DEP and Landowner entered into a consent order, in which DEP fined Landowner $10,000 for late reporting and nutrient level violations and Landowner agreed to repair and upgrade the treatment plant facility. McGoey testified that reports from DEP in 2010 and 2011 recommended that Landowner upgrade its nutrient treatment and also sanctioned Landowner for pollution and drinking water violations. Finally, McGoey stated that DEP and Landowner never advised the Township of these infractions. (R.R. at 678a–81a; ZHB op. at 4–7.)

From the evidence presented, the ZHB found that "the [Township's] concern regarding the ability of the existing treatment plant and sewer and water service infrastructure to safely and adequately handle the present and future waste water and sewage flows generated by the increased occupancy of the larger recreational vehicles is [legitimate.]" (R.R. at 682a.) The ZHB concluded, as a matter of law, that:

> the [Township's] decision to limit the size of travel trailer's placed in [the Property] is not unreasonable, arbitrary or capricious. Based upon the past failures of [Landowner's] sewage treatment plant to handle the effluent flow levels at a time when many of the travel trailers were less than 400 square feet, [the Township] has a legitimate concern in limiting the size of travel trailers to protect the health, safety and welfare of the [the Township.]

(R.R. at 684a; ZHB op. at 10.)

In making this determination, the ZHB stated that the Township's Ordinance was not arbitrary because: (1) Landowner's original restrictive covenants could not have envisioned that 12–Wide RVs or Slide–Out RVs would exist when the recreational subdivision was approved in 1977; (2) the recreational vehicles on the Property have been used as "secondary homes"; (3) Landowner did not conduct an occupancy study to determine the impact that recreational vehicles have on the water and sewage systems as requested by the Township; and (4) the eight-and-a-half-foot maximum width requirement for recreational vehicles traveling on the road is reasonable due to the fact that it closely resembles the definition of a "travel trail-

er" in the 1977 restrictive covenants. (R.R. at 681a–85a; ZHB op. at 7–11.)

However, the ZHB failed to specifically address the issue of whether a rational basis exists for permitting Slide–Out RVs to remain on the Property but not 12–Wide RVs, *i.e.,* whether the Ordinance's prohibition on vehicles that require a special highway permit is discriminatory and/or not substantially related to its stated goals. Landowner appealed to the trial court, *inter alia,* to reassert this precise issue. (R.R. at 690a, 694a–95a.)

Without receiving additional evidence, the trial court granted Landowner's appeal, in part, and declared that the portion of the Ordinance excluding RVs that require a special permit for transport is invalid and unenforceable. In an order dated October 1, 2012, the trial court reasoned, in relevant part, as follows:

[A] zoning ordinance is only valid when the means are substantially related to the desired end. The [Township] states it amended the Ordinance to preserve the purpose of RV campgrounds. A restriction on RVs that require special highway permits is not substantially related to the Ordinance's function of preserving the purpose of the campground. This restriction is not a restriction on the size of RVs. 400 square feet vehicles are already allowed in the campground pursuant to [the Ordinance.] There are no distinguishable differences between 400 square feet vehicles allowed on [the Property] and the 400 square feet vehicles requiring a special highway permit other than the size of the vehicle while it's being transported. Because the vehicles with the highway permits are the same size as RVs already allowed in the campground when in set-up mode, the

restriction is not substantially related to the end goal of preserving the campground. The special highway permit provision regarding road transport has nothing to do with the land use or building structure but rather only applies to how the vehicle gets to the site. In this case, all the main roads that access [the Property] are state highways rather than country or township roads. Therefore, the restriction of RVs that require highway permits is not substantially related to preserving the campground as the only difference between those RVs and the ones allowed ... is the size of the vehicle in transport on the highway. Further, it is [DOT] that issues the transport permits for such vehicles, not the Township....

(Trial court order at 3–4.) [2]

In response to the trial court's order and directive to file a Pa.R.A.P. 1925(b) statement, the Township alleged in its 1925(b) statement, *inter alia,* that the trial court erred in concluding that the special highway permit provision was not substantially related to the goal of preserving the campground. The Township asserted that the distinction drawn for RVs that require a special moving permit was based on the concern that 12–Wide RVs are "designed for long-term occupancy and placement[.]" (1925(b) Statement, p. 3.)

In its subsequently-issued Pa.R.A.P. 1925(a) opinion, the trial court noted, among other things, that "[n]o evidence was presented at the [ZHB] hearing to indicate that [the 12–Wide RVs] would be more 'permanent' in the recreational community." (Trial court op. at 4.)

On appeal to this Court,[3] the Township argues that the infrastructure of

---

**2.** In its decision, the trial court upheld the Ordinance's 400 square-foot restriction for re-

creational vehicles and that part of the trial court's ruling is not at issue in this appeal.

**3.** Where, as here, the trial court takes no

the Property cannot meet the demands of permanent residences and that the long-term use of park model trailers has caused environmental damage. The Township claims that the Ordinance's special highway permit provision is intended to prevent the placement of 12–Wide RVs in recreational vehicle parks because these units, regardless of their size, are reasonably expected to maintain occupancy longer than other, similar recreational vehicles.

For support, the Township asserts that the necessity of obtaining a special transit permit, in and of itself, is "a strong indication" that 12–Wide RVs will not be transported frequently and that 12–Wide RVs are likely to be occupied on the Property on a long-term basis. The Township also points to two pieces of evidence in the record submitted by Landowner. First, the Township cites a brochure from the Recreational Park Trailer Industry Association that was included in the letter reports of Landowner's engineering firm; this brochure states that 12–Wide RVs are "usually sited in RV parks for extended terms, typically for several years." And second, the Township cites Sword's testimony that first-year owners of park model trailers will occupy their trailers for approximately "144 to 149" days a year. (*See* R.R. at 441a, 488a, 671a.)

In response, Landowner, *inter alia*, describes the evidence relied upon by the Township as speculative at best and incapable of supporting a factual finding.

 Under the traditional standard applied when determining the validity of zoning ordinances, a zoning ordinance must be presumed constitutionally valid unless a challenging party shows that it is unreasonable, arbitrary, or not substantially related to the police power interest that the ordinance purports to serve. *C & M Developers, Inc. v. Bedminster Township Zoning Hearing Board,* 573 Pa. 2, 14, 820 A.2d 143, 150–51 (2002). Among other things, an ordinance will be deemed to be arbitrary where it is shown that it results in disparate treatment of similar landowners without a reasonable basis for such disparate treatment. *Id.* at 15, 820 A.2d at 151.

In *Geiger v. Zoning Hearing Board of Township of North Whitehall,* 510 Pa. 231, 507 A.2d 361 (1986), our Supreme Court struck down a township's ordinance because it drew an arbitrary and/or unreasonably discriminatory distinction between types of dwellings. The ordinance in that case permitted single-family detached dwellings, including prefabricated sectional homes, to be placed in rural residential districts as a matter of right; however, the ordinance effectively excluded the placement of a transportable home, that is, a "mobile home," from the same districts.

Our Supreme Court noted that "[t]he only difference between mobile homes and single family detached dwellings is that mobile homes are manufactured in one complete section and are designed to be transported, after fabrication, on its [sic] own wheels, or on flatbed or other trailers to its [sic] site." *Id.* at 236, 507 A.2d at 363. By contrast, "sectional homes, which are permitted in [rural] districts, are manufactured in two or more sections which

additional evidence, our scope of review is limited to determining whether the zoning board committed an error of law or a manifest abuse of discretion in rendering its decision. *In re Heritage Building Group, Inc.,* 977 A.2d 606 (Pa.Cmwlth.2009).

The Pennsylvania Recreation Vehicle and Camping Association and Recreation Vehicle Industry Association has filed an *amicus* brief in support of Landowner's position. The Pennsylvania State Association of Township Supervisors has filed an *amicus* brief in support of the Township's position.

are fastened together on site and mounted on a permanent foundation." *Id.* at 236, 507 A.2d at 364. In declaring this distinction unconstitutional as an arbitrary and capricious use of the township's police power, the court pronounced:

> [The ZHB] has not advanced, nor do we perceive, any justification for excluding homes manufactured in one complete section, while permitting homes manufactured in two or more sections or constructed on-site ...
>
> * * *
>
> [T]he [township] has failed to show any logical basis for the distinctions drawn by the [o]rdinance. The record lacks evidence of any reason or justification for classifying [a mobile home] ... [a] single section dwelling structure, permanently affixed to the realty, differently than a *conventional on-site built home or a multi-section dwelling structure.* Additionally, the record fails to show that the maintenance of [a mobile home] will in any manner adversely affect the health, safety, morals or general welfare of the community. Rather the record establishes ... that the proposed [mobile home] meets all of the technical requirements of the [o]rdinance with respect to setback, lot size, rear yard, etc., imposed in [rural] districts for a single family detached dwelling.

*Id.* at 237, 239, 507 A.2d at 364, 365.

Here, the trial court's rationale concerning the arbitrary treatment between Slide–Out RVs and 12–Wide RVs parallels the reasoning in *Geiger* regarding the differential treatment between mobile homes and sectional homes. Similar to the situation

in *Geiger*, the undisputed evidence in this case establishes that the 12–Wide RVs meet the Ordinance's 400–foot requirement and are more environmentally efficient than the Slide–Out RVs. Moreover, akin to the ordinance's exclusion of mobile homes in *Geiger*, the Ordinance's exclusion of vehicles requiring a highway moving permit concerns only the way in which 12–Wide RVs arrive and/or are set-up at the Property, and the nature of this prohibition bears no relationship to the environmental damage that the Township seeks to avoid. Therefore, unless there is evidence to justify classifying 12–Wide RVs differently than Slide–Out RVs, the Ordinance's deficiencies are the same as those of the ordinance in *Geiger*.

▪ In this case, the Township seeks to validate the Ordinance's distinction on the ground that 12–Wide RVs are "permanent" in nature and designed for long-term occupancy. In support of its proposition, the Township relies on a passing reference in an industry brochure stating that 12–Wide RVs are "usually sited in RV parks for extended terms, typically for several years"[4]; the 12–Wide RVs need a special transit permit to be transported; and Sword's testimony that first-year owners of all types of trailers occupy their trailers for approximately five months out of a year. However, this evidence is insufficient to demonstrate that 12–Wide RVs, by their very design, are incapable of being transported to and from the Property within the six-month limitation period provided for in the SALDO. Therefore, pursuant to *Geiger*, we conclude that the trial court did not err in reversing the ZHB's

---

4. We note that although the brochure was introduced into evidence without objection by Landowner, the brochure's statement is hearsay and, therefore, the statement must be sufficiently corroborated by other evidence in order to be considered competent evidence.

*Burger v. The Zoning Hearing Board of the Municipality of Penn Hills*, 86 Pa.Cmwlth. 601, 485 A.2d 879 (1984); *Walker v. Unemployment Compensation Board of Review*, 27 Pa.Cmwlth. 522, 367 A.2d 366 (1976).

decision and declaring the Ordinance's special highway permit provision substantively invalid.

Accordingly, we affirm.

## ORDER

AND NOW, this 10th day of July, 2013, the October 1, 2012 order of the Court of Common Pleas of Pike County is affirmed.