IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Oakcliffe Community Organization,   :
Oakland Planning and Development   :
Corporation, Joan Dickerson,   :
David Panasiuk, Millie Sass and   :
Elena Zaitsoff,   :
                Appellants   :
  :
           v.   :
  :
Zoning Board of Adjustment   :
of the City of Pittsburgh and the   :    No. 813 C.D. 2017
City of Pittsburgh   :    Argued: February 5, 2018


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
               HONORABLE CHRISTINE FIZZANO CANNON, Judge
               HONORABLE JAMES GARDNER COLINS, Senior Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON         FILED: March 13, 2018


Oakcliffe Community Organization, Oakland Planning and Development Corporation, Joan Dickerson, David Panasiuk, Millie Sass and Elena Zaitsoff (collectively, Objectors) appeal from the order of the Court of Common Pleas of Allegheny County (trial court), dated May 9, 2017, which affirmed the decision of the Zoning Board of Adjustment (Board) of the City of Pittsburgh (City) determining that the two-unit use of the subject property may continue.[1] We reverse.

---

[1] For context, the parties in this zoning appeal refer to three different iterations of the City's Zoning Code. The current version was effective February 26, 1999 (1999 Zoning Code). 1999 Zoning Code § 901.05. The current iteration amended and reenacted in its entirety the City's

Andrew and Nicole Redlinger (Applicants) are the owners of property located at 3202 Niagara Street (Property) in the South Oakland neighborhood of the City. Board's Findings of Fact (F.F.) No. 1. The Property is currently located in a R1A-VH (Residential Single-Unit Attached, Very-High Density) zoning district. *Id*. The Property measures 25 feet by 200 feet (5,000 sq. ft.) and is improved with a 3,200 square-foot, three-story building. *Id*. at No. 2. The building contains six bedrooms, two kitchens, two bathrooms, two furnaces and one electric meter. *Id*. at No. 4. There are three off-street parking spaces located at the rear of the building. *Id*.

On October 13, 2015, Applicants filed an application with the Board seeking "continued use of structure as two family dwelling" (Application). Reproduced Record (R.R.) at 27a-28a; Certified Record (C.R.), Exhibit (Ex.) 4. On January 21, 2016, the Board held a public hearing at which it took evidence from Mr. Redlinger and from people who opposed the Application, some of whom are Objectors.

---

zoning code that was effective May 10, 1958 (1958 Zoning Code). 1999 Zoning Code § 901.06. Prior to the 1958 Zoning Code, the operative zoning code was effective August 9, 1923 (1923 Zoning Code). *See* Supplemental Reproduced Record (S.R.R.) at 1b. The zoning codes were not submitted into evidence at the zoning hearing. Pursuant to an order of this Court, the City and the Board (Appellees) filed copies of the various versions of the Zoning Code with this Court. *See* S.R.R. This Court may take judicial notice of ordinances. 42 Pa. C.S. § 6107.

The City's current 1999 Zoning Code defines "Two-Unit Residential" as "the use of a zoning lot for two dwelling units that are contained within a single building." 1999 Zoning Code § 911.02. The 1999 Zoning Code defines "dwelling unit" as:

> a building or portion thereof designed and used for residential occupancy by a single family and that includes exclusive sleeping, cooking, eating and sanitation facilities. Buildings with more than one (1) set of cooking facilities are considered to contain multiple dwelling units unless the additional cooking facilities are clearly accessory, such as an outdoor grill.

1999 Zoning Code § 926 (Definition #72).

At the hearing, Mr. Redlinger testified that he purchased the Property in April 2015 and began to "rehab" it when he became aware that the City prohibits more than three unrelated people from living together in a single-family home. Notes of Testimony (N.T.) at 5. Mr. Redlinger stated that the "property is a single-family home" and that "[i]t's the largest single-family home in that whole area of south Oakland." *Id.* When the Board chairwoman questioned Mr. Redlinger as to whether he was stating that it was always a single-family home with no separation, Mr. Redlinger referred to an affidavit by Nancy J. Norkus (Affidavit), from whom he purchased the Property. *Id.* at 5-6. Referring to the Affidavit, he stated that Ms. Norkus' grandmother owned the property for many decades and lived on the first floor. *Id.* He also stated, "[f]or many decades her grandmother lived on the first floor, rented out the second and third floor. So for many, many decades it was used as a multi-unit." *Id.* at 6-7. He stated that there were two kitchens, one on the first floor and another on the second floor, and that those existed when he purchased the Property. *Id.* at 6. Mr. Redlinger also provided photos of the Property taken during his initial walkthrough when he purchased the property, showing a kitchen and bath on the first floor and a kitchen and bath on the second floor. C.R., Ex. A-2, Appendix (App.) C; C.R., Ex. 14; *see* F.F. No. 7.

When asked if there is an interior separation between the units, Mr. Redlinger replied, "[n]ot anymore." N.T. at 7. When questioned whether his intent was to have separate units or to have sufficient space for six unrelated adults, Mr. Redlinger explained that his "intent is to put it to what it was for many decades back to what, you know, as a multi-unit, that there would be living on the first floor, and then living on the second and third floor." *Id.* at 9. When questioned whether there were separate utilities, Mr. Redlinger explained that when he had the gas and electric

3

utilities put into his name, they said "Niagara Street Floor 1." *Id*. He asked the utility companies about it and was told that at one time the utilities would have been billed "differently." *Id*. at 9-10. Mr. Redlinger also stated that there were two separate furnaces and ductwork but only one electric service. *Id*. at 10. He also explained that two furnaces are needed to heat the home because it is such a large home. *Id*. at 11.

The two-page Affidavit was submitted as evidence. C.R., Ex. A-2, App. B; R.R. at 49a-50a. The first page is a pre-printed City form that asks questions to which Ms. Norkus responded: that she is personally acquainted with the Property "from 1954 to 2015"; that the building has been occupied as "multi-unit"; that there are "two" dwelling units within the building; and that she regards the occupancy to be a "rooming house." R.R. at 49a. On the second page, which is a typewritten statement, Ms. Norkus stated that her mother is the former owner of the Property and that prior to her mother's ownership, her mother's parents owned the Property. R.R. at 50a. Ms. Norkus stated that she, her parents and her brother lived on the second floor since the late 1960s and that her grandmother lived on the first floor.[2] *Id*. She stated that the first floor had a kitchen, a bath, and other rooms, and that the second floor had a separate kitchen and bath, and there were additional rooms on the second and third floors. *Id*. She stated that prior to her family moving in, her grandmother used the Property as a two-family dwelling, with her grandmother living on the first floor and others living on the second and third floors. *Id*.

David Panasiuk, who has lived in the neighborhood and serves as president of the Oakcliffe Community Organization, appeared and submitted a letter and petition expressing opposition to the use of the Property as two units. F.F. No.

_____

[2] We note the Affidavit does not state when their occupancy ended.

4

8; N.T. at 14-15, 17; R.R. at 72a-75a. Mr. Panasiuk asserted that although the structure has two kitchens and two bathrooms, it was never truly used for two units; that other single family homes in the area have two kitchens; and that the two-unit use would have a negative impact on the surrounding neighborhood. F.F. No. 8. Mr. Panasiuk asserted that members of the same family lived in any "dual units" that were in the Property. N.T. at 15-16. Mr. Panasiuk admitted that he has not been in the Property since he was a child and that he was basing his assumptions on the house next door. *Id.* at 16-17.

Millie Sass, who lives in the neighborhood, also testified. N.T. at 18. She objected to any change from a single home to two units. *Id.* at 19. She admitted that she has never been in the Property, but stated she observed one gas meter, one electric meter and one water meter on the Property. *Id.*

Wanda Wilson, a neighboring property owner representing the Oakland Planning and Development Corporation, appeared and opposed the proposed use. F.F. No. 9; N.T. at 28; R.R. at 76a.

Caroline Mitchell, a retired attorney who formerly lived in South Oakland and who continues to volunteer with Oakland community groups, also appeared to oppose the two-unit use. N.T. at 32, 34. Ms. Mitchell submitted information from historic Polk directories[3] and census records demonstrating past residents of the Property. F.F. No. 10. The records indicate that a number of related individuals resided at the Property over the years and that at various points, only one phone number was listed for the Property. *Id.*; N.T. at 22-25. Ms. Mitchell also submitted records purporting to show the chain of title from Ms. Norkus'

---

[3] The Polk directory appears to be a list of property addresses and names associated with each address. *See* R.R. at 60a, 62a-63a.

5

grandmother to her mother, Lucille Norkus, and that Lucille Norkus died on September 24, 2009. *See* N.T. at 21-22. Ms. Mitchell also offered records purporting to show that the house on the Property was vacant from 2013 to 2015. *See* N.T. at 26. Ms. Mitchell objected to the Affidavit, stating it was hearsay, and she also requested that the hearing be continued in order to bring in Ms. Norkus to testify. N.T. at 27. The chairwoman stated that the Board was not going to subpoena anyone. N.T. at 27; *see also* N.T. at 33.

On April 14, 2016, the Board issued its written decision. The Board concluded that Ms. Mitchell lacked standing to participate in the proceeding because she is a resident of Squirrel Hill and does not own property proximate to the Property. Board's Conclusions of Law (C.L.) No. 2. The Board denied Ms. Mitchell's request to subpoena Ms. Norkus. C.L. No. 3. The Board concluded that the two-unit use of the Property is a legal pre-existing nonconformity which has not been abandoned and may continue. C.L. No. 9. Although the Board's decision indicated that Applicants sought only a "Review" under section 911.04 of the 1999 Zoning Code for a "continued use of structure as two family dwelling," Board's Decision at 1, the Board concluded that the proposed use could also be approved under the use variance standards. C.L. No. 11. Ultimately, the Board decided "[t]he two-unit use of the Subject Property may continue, subject to the condition that the Applicant[s] provide at least two off-street parking spaces." Board's Decision at 4.

Objectors filed a timely appeal from the Board's decision with the trial court, and the City intervened. *See* C.R., Docket Entries at 2. The trial court did not take any additional evidence, and the parties submitted briefs for the trial court's review. *See id*. Thereafter, the trial court issued an opinion and order affirming the

6

Board's decision and dismissing Objectors' appeal. Objectors now appeal to this Court.

Before this Court, Objectors raise a number of questions which are condensed and reordered as follows. (1) Did the Board err by granting a nonconforming use permit based on hearsay? (2) Was there a lawful pre-existing two-family use (i.e., a legal non-conforming use) in existence on the date of a change in the Zoning Code and does such use continue to the present? (3) If there was a legal nonconforming use, was that use abandoned? (4) Did the Board err in granting a use variance?

Where, as here, the trial court does not take additional evidence, this Court's review is limited to determining whether the Board committed an error of law or an abuse of discretion. *See Valley View Civic Ass'n v. Zoning Bd. of Adjustment*, 462 A.2d 637, 639 (Pa. 1983). A zoning board abuses its discretion "only if its findings are not supported by substantial evidence."[4] *Id*. at 640. We are mindful that this Court may not substitute its interpretation of the evidence for that of the Board. *Tidd v. Lower Saucon Twp. Zoning Hearing Bd.*, 118 A.3d 1, 13 (Pa. Cmwlth. 2015). Further, the Board is the sole judge of the credibility of witnesses and the weight afforded their testimony. *Id*.

Under the current 1999 Zoning Code, a nonconforming use is a use "which does not comply with the use regulations of the zoning district in which such use is located, but which complied with the use regulations in effect at the time the use was established." 1999 Zoning Code § 926 (Definition #152). "A nonconforming use which has a valid Certificate of Occupancy and lawfully

---

[4] Substantial evidence is such evidence a reasonable mind might accept as adequate to support a conclusion. *Valley View*, 462 A.2d at 640.

7

occupies a structure or vacant site on the date that it becomes nonconforming may be continued as long as it remains otherwise lawful . . . ."[5]  1999 Zoning Code § 921.02.  The burden of establishing that a nonconforming use lawfully exists is on the property owner.  1999 Zoning Code § 921.01.F; *see Lamar Advantage GP Co. v. Zoning Hearing Bd. of Adjustment of City of Pittsburgh*, 997 A.2d 423, 438 (Pa. Cmwlth. 2010).

A nonconforming use creates a vested right in the landowner.  *Pappas v. Zoning Bd. of Adjustment of Philadelphia*, 589 A.2d 675, 676 (Pa. 1991).  Importantly, however, this Court has emphasized:

> [t]he right to maintain a nonconforming use is only available for uses *that were lawful when they came into existence and which existed when the ordinance took effect*.  It is the burden of the party proposing the existence of such a use to establish both its existence *and legality* before the enactment of the ordinance at issue.  "This burden includes the requirement of conclusive proof by way of *objective evidence of the precise extent, nature, time of creation and continuation of the alleged nonconforming use*."
>
> "The manner of use and the dates of its existence are questions of fact on which a reviewing court defers to the fact-finder; *however, the legality of a use is a question of law over which our review is plenary*."

---

[5] One of Objectors' arguments is that an occupancy permit would have been required under the 1923, 1958 and 1999 Zoning Codes and that occupancy without the required occupancy permits is not a lawful use.  At the hearing, Ms. Mitchell stated that she checked the Property's records, and that from 1940 through 2015, no one applied for an occupancy permit for the Property. N.T. at 24.  Because of our disposition, we need not address the question of what effect the lack of a certificate of occupancy has with regard to the question of whether there was a lawful pre-existing nonconforming use.

8

*Lamar Advantage*, 997 A.2d at 438 (emphasis in original omitted) (citations omitted) (emphasis added).

Objectors argue that there is not substantial evidence to establish that there was a lawful pre-existing nonconforming use on the date of the change in the zoning code and that the use continues. In particular, Objectors contend that Applicants failed to establish that the two-family occupancy use existed lawfully under either the 1923 or 1958 Zoning Code in order to allow its nonconforming status to continue under the current 1999 Zoning Code. Objectors contend that there is only direct evidence that there were two kitchens and two baths existing at the time of Applicants' purchase of the Property in 2015. Objectors contend that the Board's finding regarding the creation and existence of a two-unit use and the continuation of that use is based only on the Affidavit. Objectors argue that the Affidavit cannot serve as substantial evidence to support the Board's determination because it is hearsay.[6]

The City and the Board (Appellees), on the other hand, argue that there was substantial evidence that a two-unit residential use lawfully pre-existed the enactment of the 1958 Zoning Code.[7] Appellees argue that the Board did not err in

---

[6] Objectors additionally argue that the Board's reliance on the Affidavit was erroneous because it was in violation of the Board's hearing notice, which states, "[l]etters or petitions are not accepted; therefore, your presence is required to present testimony." R.R. at 40a. Objectors maintain, therefore, that all testimony must be in person. Objectors failed to raise this argument before the Board; therefore, it is waived. *See Society Created to Reduce Urban Blight v. Zoning Bd. of Adjustment*, 804 A.2d 116, 119 (Pa. Cmwlth. 2002).

Objectors also argue that the Board denied their request to subpoena Ms. Norkus and in doing so, the Board denied Objectors a right to cross examine Ms. Norkus and denied them due process. We need not address this issue. Because of our disposition, the deprivation of due process, if any, is moot.

[7] Appellees' argument appears to concede that the two-unit use of the Property was also prohibited, and thus nonconforming, under the 1958 Zoning Code. Indeed, when questioned at

9

admitting the Affidavit, but acknowledge that this Court has held that an adjudication cannot be founded entirely on hearsay. Appellees' Brief at 23. Appellees contend that the Board did not rely solely on the Affidavit and that the Affidavit merely supplements substantial record evidence of a legal nonconforming use.[8] *Id*. at 24.

The Board found that the building at issue was constructed in approximately 1900, and that it contains six bedrooms, two kitchens, two bathrooms, two furnaces and one electric meter. F.F. Nos. 2, 4. In addressing Applicants' photographs taken during Mr. Redlinger's walk-through when he purchased the Property in 2015, the Board stated that the photographs demonstrated the "historic condition" of the Property, "including the separate kitchens, two furnaces and separate bathrooms." F.F. No. 7. The Board also found that "[t]he Applicant submitted an [A]ffidavit from Nancy J. Norkus, who owned[9] the [P]roperty from 1954 to 2015 and who averred that the structure had been used for two units during that time." F.F. No. 6. The Board credited Applicants' evidence. C.L. No. 9. Thus,

---

oral argument regarding under what Zoning Code Appellees claim the use was legal and conforming, Appellees' counsel stated the 1923 Zoning Code. Objectors disagree that the use complied with the 1923 Zoning Code.

[8] Appellees also point to the current 1999 Zoning Code definition of "dwelling unit" and "family" to argue that the use is a two-unit residential use, in particular, because two kitchens exist. Appellees' Brief at 17-19; *see* n.1, *supra*. However, the definitions that are relevant for Applicants to establish that the use is a legal nonconforming use are not those contained in the 1999 Zoning Code. The two-unit use is not a permitted use of the Property under the current 1999 Zoning Code. *See* F.F. No. 1; 1999 Zoning Code § 911.02. Therefore, Applicants must establish that the use was legal at some time prior to the enactment of the current 1999 Zoning Code; this burden includes establishing the nature of the use and when the use was created. *See Lamar Advantage*. Thus, the relevant definitions are those contained in the operative zoning code under which Applicants claim the use was legal, i.e., the 1923 Zoning Code.

[9] We note the Affidavit does not state that Ms. Norkus herself owned the Property, only that she was familiar with it.

the Board found that a two-unit use was created in 1954 and continued to 2015. Because the Board's finding regarding the creation, nature, extent and continuation of the use is based on the Affidavit, we must address Objectors' arguments concerning the Affidavit and whether there is substantial evidence to support the Board's findings.

An out-of-court statement offered to prove the truth of the matter asserted, such as an affidavit, is hearsay. Pa. R.E. 801(c); *see In re Farnese*, 948 A.2d 215 (Pa. Cmwlth. 2008). However, the formal rules of evidence do not apply in local zoning board hearings. *Zitelli v. Zoning Hearing Bd. of Borough of Munhall*, 850 A.2d 769, 771 n.2 (Pa. Cmwlth. 2004). "[A]ll relevant evidence of reasonably probative value may be received." 2 Pa. C.S. § 554. Nonetheless, while "'local agencies are not bound by technical rules of evidence, **findings based solely on hearsay cannot stand**.'" *1400 N. Third St. Enterprises, Inc. v. City of Harrisburg License & Tax Appeal Bd.*, 175 A.3d 450, 454 n.7 (Pa. Cmwlth. 2017) (emphasis in original) (quoting *Goodman v. Commonwealth*, 511 A.2d 274, 277 (Pa. Cmwlth. 1986)); *see also McCarthy v. Philadelphia Civil Serv. Comm'n,* 339 A.2d 634, 636 (Pa. Cmwlth. 1975), *aff'd,* 424 U.S. 645 (1976) (stating that in a local agency proceeding, hearsay evidence can be admitted, but that an adjudication cannot be founded entirely on hearsay). Further, in the zoning context, this Court has stated that even where hearsay is introduced into evidence without objection, the hearsay statement must be sufficiently corroborated by other evidence in order to be considered competent evidence.[10] *See Lake Adventure Cmty. Ass'n, Inc. v. Dingman Twp. Zoning Hearing Bd.*, 79 A.3d 708, 715 n.4 (Pa. Cmwlth. 2013).

---

[10] Ms. Mitchell objected to the Affidavit on hearsay grounds, N.T. at 26-27; however, the Board, in its decision, determined that Ms. Mitchell lacked standing to participate in the proceeding, C.L. No. 2. We need not address whether her lack of standing makes it as though no

11

After review of the record, we conclude that there is no corroborating evidence to establish that there was a legal pre-existing nonconforming use that predated the current 1999 Zoning Code. As stated, Applicants had the burden to establish the precise extent, nature, time of creation and continuation of the alleged nonconforming use. *See Lamar Advantage*, 997 A.2d at 438. Although Applicants submitted photographs of the Property, including the separate kitchens and bathrooms, these photographs do not corroborate the Affidavit for the relevant time period. Indeed, Mr. Redlinger testified that the photographs depicted the Property at the time of purchase in 2015. However, there must be testimony to corroborate the Affidavit's evidence of the use of the Property at the time when the prohibitory zoning code took effect and the two-unit use became a prohibited use under that zoning code. In other words, these photographs do not corroborate the use during a time prior to the adoption of the 1958 Zoning Code. Appellees also point to census records from 1940 which they assert demonstrate that two unrelated families were living in the Property in 1940. Appellees' Brief at 22. Additionally, Appellees point to the Polk directories which list two names in 1940, two names in 1956 and three names in 1957, *id*., and they maintain that Ms. Mitchell conceded that two separate families occupied the Property in 1940 and 1956, *id*. at 26. However, these documents do not corroborate the nature of the use at the time of the enactment of the 1958 Zoning Code, May 10, 1958. Additionally, neither the census records nor the Polk directories corroborate the requisite continuity of the use. Because there is not corroborating evidence to support any statements in the Affidavit regarding the extent, nature, time of creation and continuation of the alleged nonconforming use,

---

objection was made. Even treating the Affidavit as if it were admitted without any objection, it can support a finding of the Board only if it is sufficiently corroborated by competent evidence in the record. *See Lake Adventure Cmty. Ass'n, Inc. v. Dingman Twp. Zoning Hearing Bd., 79 A.3d 708, 715 n.4 (Pa. Cmwlth. 2013).*

12

there is a lack of substantial evidence to support the findings. *See Lake Adventure*. The lack of substantial evidence to support the Board's findings is an abuse of discretion. *See Valley View*.

Additionally, Applicants failed to present any evidence regarding the nature of the use and its relation to the 1923 Zoning Code, the Zoning Code under which Appellees argue the use was permitted. It was Applicants' burden to establish that the two-unit use was both *in existence* and was *lawful* before the enactment of the zoning code under which the two-unit use was prohibited. *See Lamar Advantage*, 997 A.2d at 438; *Moros v. City of Pittsburgh, Zoning Bd. of Adjustment*, 527 A.2d 1117, 1119 (Pa. Cmwlth. 1987). However, Applicants failed to present any evidence to establish the zoning status of the Property under the zoning code under which Applicants claim the use was permitted. Indeed, Applicants did not even present any evidence to establish in which zoning district the Property was located under the 1923 Zoning Code and did not present any evidence regarding compliance with that Code. Applicants' failure to address the relation of the 1923 Zoning Code to the Property in question is fatal as matter of law.[11] *See Moros*.

Furthermore, because Applicants failed to establish that the two-unit use was a lawful pre-existing nonconforming use that continued, we need not address Objectors' argument that the use was abandoned.

Lastly, Objectors argue that the Board erred by granting a use variance. Appellees, however, admit that the Board did not expressly grant a use variance. Appellees' Brief at 8. Additionally, Applicants did not apply for a use variance, but rather sought a continued use of a structure as a two-family dwelling requiring

---

[11] Even if Applicants were to claim the use was permitted under the 1958 Zoning Code, Applicants also failed to present any evidence concerning the zoning status of the Property under that Code.

13

review under Section 911.04 of the 1999 Zoning Code. *See* Application, C.R., Ex. 4; N.T. at 3. Thus, we need not address Objectors' argument that the Board erred by granting a use variance.

Accordingly, for the foregoing reasons, we reverse the trial court's order affirming the Board's decision.[12]

_____
CHRISTINE FIZZANO CANNON, Judge

_____

[12] In the "Conclusion" section of their brief, Objectors ask this Court for an award of all costs on appeal in their favor and against the City. Objectors' Brief at 63. Objectors' request is denied without prejudice to Objectors to renew their request through the proper procedures.

14

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Oakcliffe Community Organization,   :
Oakland Planning and Development   :
Corporation, Joan Dickerson,   :
David Panasiuk, Millie Sass and   :
Elena Zaitsoff,   :
             Appellants   :
   :
        v.   :
   :
Zoning Board of Adjustment   :
of the City of Pittsburgh and the   :   No. 813 C.D. 2017
City of Pittsburgh   :

# O R D E R

AND NOW, this 13th day of March, 2017, the order of the Court of Common Pleas of Allegheny County, dated May 9, 2017, is REVERSED.

_____
CHRISTINE FIZZANO CANNON, Judge