# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

M & D Properties, Inc., : 
             Appellant : 
              : 
        v. : No. 578 C.D. 2021
              : Argued: February 6, 2024
Board of Commissioners of the : 
Township of Upper St. Clair :

**BEFORE:**    **HONORABLE RENÉE COHN JUBELIRER,** President Judge
                    **HONORABLE CHRISTINE FIZZANO CANNON,** Judge
                    **HONORABLE MARY HANNAH LEAVITT,** Senior Judge

## OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**PRESIDENT JUDGE COHN JUBELIRER**      **FILED: March 15, 2024**

M & D Properties, Inc. (M & D) appeals from an Order of the Court of Common Pleas of Allegheny County (common pleas) filed April 29, 2021, which affirmed a decision by the Board of Commissioners (Board) of the Township of Upper St. Clair (Township) denying M & D's Application for Preliminary and Final Subdivision Approval for a two-lot plan. Contending unique topography, such as wetlands and steep slopes, rendered it economically not feasible to strictly comply with the Township's Subdivision and Land Development Ordinance (SALDO), M & D sought consolidation of five existing vacant lots and modifications from certain SALDO provisions, which the Board denied, concluding M & D had not demonstrated undue hardship. Without taking additional evidence, common pleas affirmed. On appeal, M & D argues it could support its request for modifications by

showing either undue hardship or unreasonableness, which M & D asserts it did through uncontroverted evidence, and it was error or an abuse of discretion to deny the modifications based on what M & D asserts were general, speculative concerns of neighbors of alleged adverse impacts of development.[1]  Upon review, while we agree that undue hardship or unreasonableness may be a basis to seek modification of a SALDO provision, here, M & D only pursued modification as an undue hardship and, thus, cannot now assert for the first time on appeal that the Board erred[2] in failing to consider whether strict compliance with the SALDO was unreasonable. Even if the issue was not waived, we conclude there was no error as M & D's undue hardship and unreasonableness arguments are both premised on it not being economically feasible to develop the subject property (Property) except as proposed, evidence of which the Board rejected.  Because the Board did not credit M & D's evidence that it was cost prohibitive to develop the Property in compliance with the SALDO, particularly where there was no evidence of the value of the Property, M & D did not meet its burden of showing that the Board erred by denying the modifications.  Accordingly, we affirm.

## I.   BACKGROUND

M & D acquired the Property in the Township in 1989 and has previously sought to develop it but no development has occurred and the Property remains vacant.  (Reproduced Record (R.R.) at 49a.)  In 2005, M & D filed an application

---

[1] We have combined M & D's arguments for ease of discussion.

[2] M & D asserts in its brief that common pleas erred or abused its discretion by not considering unreasonableness.  (M & D's Brief (Br.) at 14.)  However, as common pleas did not take additional evidence, we review the governing body's decision, here the Board's, for errors of law or abuses of discretion.  *Miravich v. Township of Exeter, Berks County*, 54 A.3d 106, 110 n.4 (Pa. Cmwlth. 2012).

2

with the Board seeking approval of a six-lot plan, but the Board only approved a four-lot plan, which M & D did not pursue, citing costs associated with the Property's topography. (*Id.* at 80a-81a.) The Property is described as undeveloped with a stream bisecting it, has wetlands that would need to be mitigated, and is situated on a steep hillside with a 35-degree grade change. (*Id.* at 46a.)

In May 2020, M & D filed an application seeking to consolidate the vacant lots with an adjacent lot it recently purchased, on which a single-family residence is situated. From seven lots, M & D proposed to create two new lots: one with the existing residence (Lot 1), and one approximately 10 acres in size on which a new single-family residence would be constructed (Lot 2). M & D proposed Lot 2 would be what is known as a flag lot, with a long driveway accessing Locust Lane, as depicted on the plan below.



(R.R. at 180a.)

M & D maintained accessing Lot 2 via Quigg Drive was not economically feasible due to the topographic conditions. M & D also sought modification of certain provisions of the Township's SALDO, namely:

- Section 114.41.2 Building lines. The front building line and perimeter setback line as required in the zoning code shall be considered a minimum and shall be adhered to unless variances are granted by the Zoning Hearing Board or modifications by the Board. . . .

- Section 114.41.3. Side lot lines. Side lot lines shall be substantially at right angles or radial to streets. . . .

- Section 114.41.6. Double frontage lots.[3] Double frontage lots shall be avoided except where essential to provide separation of residential development from traffic arteries or to overcome specific disadvantages of topography and orientation.

(UPPER ST. CLAIR SUBDIVISION & LAND DEVELOPMENT CODE (Code), §§ 114.41.2, 114.41.3, 114.41.6 (1991), R.R. at 245a-46a (unnecessary capitalization removed).)[4]

Upon review, the Township Planning Commission recommended the Board deny the application. A public hearing was scheduled before the Board. At the July 6, 2020 hearing, David Lucci, a registered landscape architect with Victor-Wetzel Associates (Expert), and David Steinbach, a principal of M & D (Principal),

---

[3] A double frontage lot is defined as "a lot having lot lines which extend along two non-intersecting streets." (UPPER ST. CLAIR SUBDIVISION & LAND DEVELOPMENT CODE (Code) § 114.10.27 (1991).) Excerpts of the Code are found in the Reproduced Record, but the entire Code is available in the original record at Item number 8.

[4] M & D originally sought modifications related to the side lot line and double frontage lots, but at the end of the first public hearing, a question was raised as to whether the third modification was required. Because the SALDO required modification requests to be made in writing, the plan was tabled to allow M & D to supplement its request, which it did. (R.R. at 64a-67a.)

4

testified.[5]  Expert described the topographical conditions of the Property and what would be required to access Lot 2 via Quigg Drive.  Expert testified that 15,000 cubic yards of fill, which is the equivalent of 500 truckloads, and 225 lineal feet of culvert would be needed, along with joint permitting from the Army Corps of Engineers (Army Corps) and Department of Environmental Protection (DEP), sewage pipes would need to be enclosed in concrete, and approximately one-third of an acre of wetlands would need mitigated, at a combined cost of $330,000.[6]  (R.R. at 46a-48a.)  Principal described the efforts M & D made since purchasing the Property in 1989 to develop the Property and that costs prevented it from developing the four lots previously approved.  (*Id.* at 49a-50a.)  Principal explained M & D purchased Lot 1 when the owner was selling specifically to provide a driveway to access Lot 2.  (*Id.* at 50a-51a.)

At a second public hearing on the plan, held on August 3, 2020, Expert and Principal again testified, and several members of the public also commented on the plan.[7]  Expert testified his firm did the cost estimate for development of the Property in 2004-05, as well as at least three other times, and advised against developing the Property each time due to costs.  (R.R. at 80a-81a.)  Expert testified again as to the $330,000 estimate to get access to the site via Quigg Drive and the components of that cost.  (*Id.* at 83a-87a.)  Expert testified that permitting requirements are more stringent now than they were in 2005 so the likelihood of obtaining a joint permit from DEP and the Army Corps was less now, but M & D's counsel explained

---

[5] The transcript of the July 6, 2020 hearing is in the Reproduced Record at pages 35a through 69a.

[6] This is comprised of $150,000 for fill, $115,000 for the culvert, $10,000 for the concrete encasing, $10,000 for wetlands mitigation, and $45,000 for permitting.  (R.R. at 48a.)

[7] The transcript of the August 3, 2020 hearing is in the Reproduced Record at pages 70a through 169a.

5

permitting was not part of M & D's hardship request. (*Id.* at 86a-87a, 101a.) Rather, M & D's counsel stated, "We are trying to make the legal case for a hardship." (*Id.* at 102a.) When asked about the value of a 10-acre lot in this area, such as Lot 2, Expert did not respond with a specific value except to say it was less than what residents who were opposed to the plan were suggesting the Property was worth due to the topography. (*Id.* at 92a-93a.) Principal testified that based on the costs, it did not make sense to develop the four lots that were previously approved or M & D would have done so. (*Id.* at 121a.) Several residents who were opposed to the plan also questioned M & D's witnesses and testified about concerns of water runoff and safety due to traffic. (*Id.* at 128a-63a.)

Following written submission by M & D and any interested residents, the Board held a third public hearing on September 8, 2020,[8] at which it enacted an ordinance denying the application (Ordinance). The Board found M & D "failed to show by reason of exceptional topographic or other physical conditions[] that strict compliance with the . . . SALDO would cause practical difficulty or exceptional and undue hardship." (Ordinance § 3.)[9] With relation to the side lot line and double frontage provisions, the Board found as follows:

> [M & D] claimed that it would be difficult if not impossible to utilize the access from the abutting Quigg Drive because it would be costly to access the [P]roperty from Quigg Drive due to topography. [M & D] claimed through [] [E]xpert that the costs would be high, but did not explain what the sale point of the lot would be nor did [it] disclose the profit margin to be made on the sale of the lot. The Board also took note [M & D] purchased the adjoining lot . . . for $518,000 for the purpose of access. This is a good indication that the value of the development was very high. Further there was no explanation as to

---

[8] The transcript of the September 8, 2020 hearing is in the Reproduced Record at pages 170a through 177a.

[9] The Ordinance is in the Reproduced Record at pages 272a through 274a.

why an alternative layout creating more lots would still be cost prohibitive. The only statement from the developer was that the best proof of the cost prohibitive nature of the higher density development was the fact that it did not happen. This is not sufficient in that there could be any number of other reasons why it was not developed including but not limited to lack of financing or lack of desire to develop by the owner or speculation that the land would go up in value.

(*Id.* §§ 3.1-3.2.)

The Board further found that the modifications would be "directly opposed to the spirit and letter of the Township Code" and "would negatively impact the peaceful enjoyment of property of the neighboring property owners." (*Id.* § 3.3.) Moreover, the Board found "[t]he creation of a massive flag lot with an exceptionally long driveway will create traffic that will severely change the nature and character of the neighborhood and would create safety hazards by creating a driveway to bifurcate [] residential lots." (*Id.*) The Board concluded that granting M & D the "modifications would not further the interests of the Township and that literal enforcement of the SALDO will not exact undue hardship on [M & D]." (*Id.* § 4.) Rather, the Board found doing so "would be contrary to the public interest and would impair the intent and purpose of the SALDO and the desirable general development of the neighborhood and the community." (*Id.*)

M & D appealed to common pleas. Following briefing and oral argument, common pleas issued its April 29, 2021 Opinion and Order, affirming the Board's decision and denying and dismissing M & D's appeal. M & D thereafter filed a timely Notice of Appeal.

7

## II. PARTIES' ARGUMENTS

Before this Court, M & D argues common pleas[10] erred or abused its discretion because the SALDO and the Pennsylvania Municipalities Planning Code (MPC)[11] allow modifications by demonstrating either undue hardship or unreasonableness and only undue hardship was considered. M & D argues it is unreasonable to develop the Property with access via Quigg Drive for anything less than six lots. M & D also argues it is per se unreasonable to deny modifications to construction of a single-family dwelling on a 10-acre lot. It asserts it established it is entitled to the modifications since access via Quigg Drive is not feasible due to the unique site conditions, which result in extraordinary site costs. It argues the proposed access via Locust Lane is the only feasible access, is not contrary to the public interest, and is the minimum relief needed. M & D contends that if access via Quigg Drive was feasible, it would have developed the Property long ago when it was approved for the four-lot plan and the best evidence of it being cost prohibitive is that the Property was never developed. As for the Board's finding that there was no evidence of the Property's value, M & D argues that is irrelevant since it is proposing the minimum development. M & D argues developing the Property is cost prohibitive regardless of regulatory approval, especially when the highest density the Board will allow is four lots, which is not economically feasible. M & D further argues its Expert did testify as to the cost associated with developing the Property. So long as an applicant meets the criteria for a modification in Section 503(8) of the MPC, 53 P.S. § 10503(8),[12] which M & D

---

[10] Although M & D frames its questions presented as **common pleas** erring or abusing its discretion, as stated in note 2, *supra*, since common pleas did not accept new evidence, we review the **Board's** decision for error or abuse of discretion.

[11] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101-11202.

[12] Section 503(8) provides:

**(Footnote continued on next page…)**

8

contends it did here, the modification may be granted, unless the municipality establishes the modification is contrary to the public interest, which M & D says did not occur here. Finally, M & D argues that the Board's findings that the plan would negatively impact the peaceful enjoyment of neighbors or be contrary to the public interest is not supported by substantial evidence as the residents objecting to the plan only testified as to generalized, speculative concerns about traffic.

The Board responds M & D only argued undue hardship before it and common pleas and, therefore, its argument that the Board should have considered unreasonableness is waived. Even if the argument is not waived, the Board argues M & D has the burden, as the applicant, to meet the criteria for a modification, and it has not shown unreasonableness. According to the Board, as long as one reason for denial is supported by record evidence,[13] the decision should stand, and M & D cites no cases where a decision was reversed on unreasonableness grounds. The Board argues it was not required to accept Expert's testimony concerning it being

---

The subdivision and land development ordinance may include, but need not be limited to:

. . . .

(8) Provisions for administering waivers or modifications to the minimum standards of the ordinance in accordance with [S]ection 512.1, [added by Section 40 of the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10512.1,] when the literal compliance with mandatory provisions is shown to the satisfaction of the governing body or planning agency, where applicable, to be unreasonable, to cause undue hardship, or when an alternative standard can be demonstrated to provide equal or better results.

53 P.S. § 10503(8).

[13] The Board acknowledges that "if an applicant, unlike here, presents credible evidence that establishes all of the criteria for a modification, a [b]oard would abuse its discretion if it denied a modification. That is, a [b]oard or court is not permitted to deny a waiver on *arbitrary* grounds not supported by the record." (Board's Suppl. Br. at 12 (emphasis in original).)

economically unfeasible to access the Property via Quigg Drive when there was no evidence of the sales price or expected profits. The Board points out it can reject even uncontradicted testimony. Further, the Board asserts economic hardship alone is insufficient to justify modification of the SALDO. Finally, the Board argues that even if there was an undue hardship, it was appropriate to deny the requested modifications because they were contrary to the public interest, another criterion for which M & D bore the burden, which it acknowledged at the hearing, but still presented no evidence to support. According to the Board, only if an applicant meets all the criteria for a modification may the Board grant the modification. Because M & D did not do so here, the Board contends it was within its discretion to deny the request.

## III. DISCUSSION

Both the MPC and SALDO permit the Board to grant modifications. Specifically, Section 512.1(a) of the MPC, 53 P.S. § 10512.1(a), provides:

> The governing body or the planning agency, if authorized to approve applications within the [SALDO], may grant a modification of the requirements of one or more provisions if the literal enforcement will exact undue hardship because of peculiar conditions pertaining to the land in question, provided that such modification will not be contrary to the public interest and that the purpose and intent of the ordinance is observed.

*Id.*

Township's SALDO further provides, in relevant part:

> In any particular case where the developer can show by plan and written statement that, by reason of exceptional topographic or other physical conditions, strict compliance with any requirement of this chapter would cause practical difficulty or exceptional and undue hardship, the Board . . . may relax such requirements to the extent deemed just and proper, so as to relieve such difficulty or hardship provided that such relief may be granted without detriment to the public good and without

10

impairing the intent and purpose of this chapter or the desirable general development of the neighborhood and the community in accordance with any comprehensive plan. . . .

(Code § 114.14.2, R.R. at 244a (unnecessary capitalization removed).)

In addition, the SALDO provides:

When, owing to special conditions, a literal enforcement of this chapter would result in unnecessary hardship, the Board . . . may make such reasonable exceptions thereto as will not be contrary to the public interest and may permit the sale of a lot, issuance of a permit or erection of a building, subject to conditions necessary to assure adequate public and private improvements.

(*Id.* § 114.14.3, R.R. at 244a (unnecessary capitalization removed).) The applicant bears the burden of providing grounds for a modification of the SALDO requirements. *Appeal of Cornell Homes from the Decision of the Upper Darby Council Dated Oct. 17, 2012* (Pa. Cmwlth., No. 1050 C.D. 2013, filed Jan. 17, 2014), slip op. at 3.[14] The burden of proof for seeking modifications of a SALDO requirement is less rigorous than the burden for obtaining a variance from a zoning requirement. *Telvil Constr. Corp. v. Zoning Hearing Bd. of E. Pikeland Twp.*, 896 A.2d 651, 656 (Pa. Cmwlth. 2006). Furthermore, while Section 512.1(a) of the MPC grants the governing body discretion in whether to grant a modification, our court has said that discretion is not unfettered. "A governing body may have abused its discretion in refusing to grant waivers where the denial is contrary to the recommendations of its experts or officials and literal enforcement of the SALDO requirements will frustrate the effect of the improvements designed to implement other requirements." *CGR Real Est., LLC v. Borough Council of The Borough of*

---

[14] Pursuant to Pennsylvania Rule of Appellate Procedure 126(b), Pa.R.A.P. 126(b), and Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a), an unreported opinion of this Court, while not binding, may be cited for its persuasive value.

*Franklin Park* (Pa. Cmwlth., Nos. 780, 971, 972 C.D. 2016, filed Jan. 26, 2017), slip op. at 10 (citing *Ruf v. Buckingham Township*, 765 A.2d 1166, 1169 (Pa. Cmwlth. 2001)).

Under both the MPC and SALDO, requests for modifications must be in writing, and "[t]he request shall state in full the grounds and facts of **unreasonableness** or **hardship** on[15] which the request is based, the provision or provisions of the ordinance involved and the minimum modification necessary." 53 P.S. § 10512.1(b) (emphasis added). (*See also* Code § 114.14.4, R.R. at 244a.) In *Valenti v. Washington Township*, 737 A.2d 346 (Pa. Cmwlth. 1999), owners of a property adjacent to a proposed development appealed a township board of supervisors' decision approving a 14-lot residential subdivision. The court of common pleas affirmed that board's decision concluding that the ordinance at issue required either unreasonableness or hardship be shown and the developer "set forth in writing the requests for waivers and the grounds and facts of unreasonableness upon which the requests were based." *Id.* at 347. On appeal to this Court, the adjacent property owners argued the developer had to establish undue hardship based on the language of the ordinance. *Id.* We construed two similar provisions to those here – one which discussed only hardship and another that provided the written request should state the grounds and facts of unreasonableness or hardship – together and held that a landowner could seek modification under either basis. *See also In Re: Appeal of the J.W. McGrath Org. from Denial of the Council for the Twp. of Bristol* (Pa. Cmwlth., No. 2119 C.D. 2009, filed Dec. 1, 2010), slip op. at 7-10 (holding same). Given the similarity in provisions here, we discern no reason that

---

[15] The SALDO uses "upon" instead of "on." (Code § 114.14.4, R.R. at 244a.)

an applicant could not seek modification under the Township's SALDO for either unreasonableness or undue hardship.

In its Revised Requests for Modifications, dated July 27, 2020, M & D stated, "[s]et forth below are the grounds for the requested modifications, the facts of **unreasonableness or hardship** on which the requests are based, the provisions of the ordinance involved and the minimum modifications necessary." (R.R. at 213a (emphasis added).) M & D also recognizes the general legal principle from *Valenti* that "[a] waiver of a [SALDO] requirement can be granted on a showing of **unreasonableness or undue hardship**." (*Id.* at 217a (emphasis added).) Yet, in the same request, M & D stated, "[t]here are peculiar physical conditions pertaining to the land in question that exact[] **undue hardship** on the applicant," "[t]he inability to reasonably access Quigg Drive creates the **unnecessary hardship** that warrants the granting of the requested modifications," and "[t]he peculiar circumstances associated with this site constitute a classic **hardship** that warrants approval of the requested modifications." (*Id.* at 214a-15a (emphasis added).) M & D made numerous other representations to the Board that it was pursuing its modification requests on the basis of hardship, not unreasonableness. (*See, e.g.*, M & D's Memorandum in Support of Requested Modifications for Proposed Two-Lot Subdivision, R.R. at 29a-30a (asserting "[l]iteral enforcement of [the] SALDO . . . will exact **undue hardship**. . ." and "strict compliance . . . will cause practical difficulty and exceptional and **undue hardship**" such that modification was necessary "to relieve the **hardship**") (emphasis added); Aug. 3, 2020 Hr'g Tr. at 33, R.R. at 102a (M & D's counsel stating: "We are trying to make the legal case for a **hardship**.") (emphasis added).) While under *Valenti*, a landowner **could** seek a modification for **either undue hardship or unreasonableness**, here, M & D plainly

13

sought modification **only** on the basis of **undue hardship**. Thus, we cannot conclude the Board erred in evaluating M & D's application for relief on the basis that M & D itself identified – undue hardship. Nor can we conclude the Board abused its discretion in failing to consider unreasonableness when M & D did not seek modification on that basis. "An abuse of discretion occurs when the governing body's findings are not supported by substantial evidence." *In re: Appeal of Provco Pinegood Sumneytown, LLC*, 216 A.3d 512, 517 n.6 (Pa. Cmwlth. 2019). As the above-cited record evidence reflects, M & D asserted only undue hardship as a basis for its requested modifications.

Notwithstanding, even if the Board had an obligation to consider the requested modifications on the basis that strict compliance with the SALDO was unreasonable, we discern no error because M & D's unreasonableness and undue hardship arguments are both premised on it not being economically feasible to develop the Property with access via Quigg Drive, evidence of which the Board did not credit.[16] As common pleas explained:

---

[16] Although the Board did not make specific findings of fact related to unreasonableness, a remand is not necessary because it did make factual determinations as to the credibility of M & D's witnesses. In *Melwood Corporation v. Zoning Board of Adjustment of the City of Pittsburgh*, we stated:

> There is authority . . . for the proposition that where the fact-finder has failed to make necessary findings on a specific issue essential to the determination of a case, and where the record as a matter of law would support only one legal conclusion with respect to that issue, rather than uselessly delaying the case by remanding, we will resolve the issue on appeal.

528 A.2d 668, 670 (Pa. Cmwlth. 1987).

Here, the Board, as fact-finder, **did** make factual determinations and specifically **rejected** M & D's evidence related to alternative development plans not being economically feasible, as aptly summarized by common pleas in the above excerpt of its opinion. Therefore, a remand for factual determinations about whether it is unreasonable to require strict compliance with the **(Footnote continued on next page…)**

14

Although the Board does not dispute that there are some developmental constraints on the Property, it found that M & D failed to provide sufficient evidence to meet the criteria for a modification of Section 114.14 of the SALDO. M & D relied on the alleged economic infeasibility of developing the Property using the available Quigg Drive access and instead insisted on needing the unpermitted flag lot with double frontage and access via Locust Lane. M & D claims that it would be a hardship to utilize the access from Quigg Drive because of the stream and wetlands which would require approval from [DEP] and the Army Corps. . . . [The Board] . . . noted that M & D failed to explain why an alternative layout of the Property would still be cost prohibitive. [Expert] testified that it would cost $330,000 to develop the Property via Quigg Drive but did not provide testimony or evidence that the number was cost prohibitive or created a hardship. . . . [t]he Board found that [Expert]'s testimony did not provide sufficient evidence of hardship. There was no evidence that established what the post-development value of the Property would be and therefore that the costs incurred[] would make it economically infeasible. . . . After being questioned by an [o]bjector at the hearing about viability and selling price, [Expert] stated that the four lots back in 2005/2006 were not viable so a single lot will not be viable either. However, [Expert] failed to give his opinion on a potential selling price for the as-developed Property and only would deny that it was worth $190,000. . . . Section [512.1] of the . . . []MPC[] permits a governing body to "grant a modification of the requirements of one or more provisions if the literal enforcement will exact undue hardship because of peculiar conditions pertaining to the land in question, provided that such modification will not be contrary to the public interest and that the purpose and intent of the ordinance is observed." [53 P.S. § 10512.1.] The Commonwealth Court has held that "where literal enforcement of a requirement under the [SALDO] will frustrate the effect of the improvements designed to implement other requirements, grant of a waiver is proper." *Ruf* . . . ,765 A.2d [at] 1169. . . . Here, however, [Expert] failed to establish hardship except for a reduced profit margin and the topography of the Property. . . .

(Op. at 4-5.)

SALDO because it is not economically feasible to develop the Property with access via Quigg Drive, when the Board already answered that question, would accomplish nothing.

15

We agree with this reasoning by the Honorable Joseph M. James of common pleas and would add that "[i]n a land use proceeding, the [B]oard is the ultimate fact-finder and the exclusive arbiter of credibility and evidentiary weight." *Joseph v. N. Whitehall Twp. Bd. of Supervisors*, 16 A.3d 1209, 1218 (Pa. Cmwlth. 2011) (citation omitted). Furthermore, "[a]s the fact[-]finder, the Board has the power to reject even uncontradicted testimony if the Board finds the testimony to be lacking in credibility." *Heritage Bldg. Grp., Inc. v. Bedminster Twp. Bd. of Supervisors*, 742 A.2d 708, 710 (Pa. Cmwlth. 1999). Although Expert testified as to the cost associated with providing access via Quigg Drive, there was no testimony as to what the Property might be worth. Without such evidence, the Board could not compare the costs to determine whether it is truly cost prohibitive. Thus, we cannot agree with M & D that price is irrelevant.

M & D also argues the Board had evidence that the Property was never developed and that this alone was sufficient to establish it was economically not feasible to develop the Property with access via Quigg Drive. Essentially, M & D is asking the Board to credit M & D's witnesses' uncontroverted testimony, which, as fact-finder, it is not required to do. *Id.* (holding a zoning board has the authority to reject even uncontradicted testimony). M & D argues the Court in *Ruf* determined that the estimated $45,000 it would cost to widen a street to comply with the municipality's SALDO was unreasonable and created an undue hardship.[17] However, notably, in *Ruf*, the municipality which denied the request for modification disregarded the recommendations of its own civil engineer and public works director

---

[17] While M & D agrees with the conclusion in *Ruf* as being "consistent with the intent of the MPC," it asserts the holding is contrary to the MPC because it places the burden on the applicant to establish the purpose of the SALDO would be served and development would not be contrary to the public's interest. (M & D's Suppl. Memo. of Law at 16-17.)

as to the topographical features of the property and the costs associated with complying with the SALDO. 765 A.2d at 1169. Furthermore, the Court reasoned that the undisputed evidence showed that it was impossible to comply with the SALDO's requirements as to the road width and stormwater controls without violating the natural resource protection standards set forth in the zoning ordinance. *Id. Ruf* is distinguishable, as these are not the facts present here.

Based upon the foregoing reasons, we conclude the Board did not err or abuse its discretion in denying M & D's application. Accordingly, we affirm common pleas' order dismissing M & D's appeal and affirming the Board's decision.[18]

---

**RENÉE COHN JUBELIRER,** President Judge

---

[18] Because M & D did not meet its burden of showing either unreasonableness or hardship, we need not address whether the Board erred in concluding the modifications "would be contrary to the public interest and would impair the intent and purpose of the SALDO, or the desirable general development of the neighborhood and the community." (Ordinance § 3.) *See Kassouf v. Township of Scott*, 883 A.2d 463, 473 (Pa. 2005) (holding "a denial of approval for a plan can stand if supported by any one of the reasons set forth for denial").

17

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

M & D Properties, Inc.,         :
              Appellant      :
                        :
           v.               :     No. 578 C.D. 2021
                        :
Board of Commissioners of the    :
Township of Upper St. Clair       :

## **O R D E R**

**NOW**, March 15, 2024, the Order of the Court of Common Pleas of Allegheny County, filed April 29, 2021, is **AFFIRMED**.

_____
**RENÉE COHN JUBELIRER,** President Judge